**Linette J. HANNA, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–987.

United States Court of Veterans Appeals.

June 6, 1994.

As Amended July 12, 1994.

Linette J. Hanna, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Kar-

**508**

en P. Galla were on the pleadings for appellee.

Before KRAMER, HOLDAWAY, and IVERS, Judges.

KRAMER, Judge:

Appellant, Linette J. Hanna, appeals a December 31, 1991, decision of the Board of Veterans' Appeals (BVA) which found that appellant had not submitted a well-grounded claim for service connection for the cause of her husband's death, and that she was not entitled to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318 (veteran rated totally disabled for 10 or more continuous years prior to his death). The Court has jurisdiction under 38 U.S.C. § 7252.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The veteran, Thomas Lowery, served on active duty from November 1917 to December 1918. S.R. at 3. His health was described as "good" at discharge. S.R. at 7. There are no service medical records. In 1921, he was hospitalized with a diagnosis of chronic pulmonary tuberculosis (PTB). S.R. at 14. The 1921 hospital report noted that the veteran had been hospitalized twice during service in 1918 "on account of fever." S.R. at 12. A February 1925 VA medical report contained diagnoses of PTB and mitral valve insufficiency. R. at 116. In March 1925, he was service connected for PTB, effective back to the date of discharge. R. at 118. A temporary total disability rating was granted from February 1925. *Id.* In the same rating decision, service connection was denied for mitral valve insufficiency. *Id.*

The veteran was service connected for bronchitis in March 1926. R. at 148. A May 1926 VA medical report revealed diagnoses of moderately advanced PTB, apparently arrested, and chronic bronchitis. R. at 152, 154. Based on this diagnosis, the veteran's total disability rating was reduced to 75% in August 1926 (R. at 157), and to 15% in April 1927 (R. at 159). By rating action dated September 1933, his disability rating was increased to 30%, effective July 1, 1933, to be reduced to 0%, effective August 23, 1936, because the PTB had remained inactive and arrested since August 1926. R. at 189. But cf. R. at 221 (October 1937 decision of the Dependents Pension Board stating that the veteran's bronchitis was disabling to a degree of 30% or more at the time of death).

The veteran died in September 1937. R. at 198, 205. On the death certificate, Dr. J.H. McClendon stated that coronary sclerosis of two years' duration was the principal cause of death, and that anemia was a contributory cause. R. at 205. Shortly after the veteran's death, appellant applied for benefits for herself and her children. R. at 199. An October 1937 rating decision determined that the veteran's coronary sclerosis and anemia were not due to his military service. R. at 221. A February 1938 "Disallowance Memorandum" stated that appellant's claim for benefits was disallowed because the veteran's death was "not due to, or the result of, a directly or presumptively service-connected disease." R. at 247. Also in February 1938, appellant received a notice that she had been awarded "compensation" as the "unremarried widow" of the veteran, and that her portion would be discontinued upon her remarriage or death, and each child's portion discontinued when he or she reached 18 years of age, married, or died. R. at 243.

Appellant remarried in October 1943 (R. at 273), and her compensation was discontinued in November 1943 (R. at 274). In March 1944, another "Disallowance Memorandum" was issued, stating that death benefits were disallowed because the veteran's death was not "due to, or the result of, a service-connected disease or injury." R. at 302. "Compensation" payments continued for the children, and an income verification letter dated in February 1946 referred to the payments as "death pension payments." R. at 314. In 1960, one of the children applied for education benefits. R. at 377. His claim was denied because the veteran's death was not due to a service-connected injury or disease. R. at 380, 382. The child appealed, and his claim was denied by the BVA in August 1961 because the evidence did not show that a cardiovascular disease was incurred in or

aggravated by service, or that the veteran's PTB or bronchitis substantially or materially contributed to the veteran's death. R. at 390. Appellant's second husband died in December 1962, but she made no attempt to reopen her claim of entitlement to death pension. R. at 392, 395–96.

In 1990, appellant filed a claim for DIC, stating that the cause of death was due to service or, alternatively, that the service-connected disability, if not the actual cause of death, was a "contributing factor" to death. R. at 392. She also stated that the veteran "was rated totally disabled from service-connected disability" (*Id.*) and that she "drew widows pension" after the veteran's death until her remarriage (R. at 395). In an attachment to her application for DIC, appellant stated that the veteran's death was assumed to be from heart problems but that he was rated totally disabled from service-connected disability and received a total disability pension from the VA for more than 10 years, until his death in 1937. R. at 398.

In January 1991, the RO, treating appellant's application as both a reopened claim of service connection for cause of death and a claim for DIC under 38 U.S.C. § 418 (now 38 U.S.C. § 1318) denied both claims, finding that the veteran was not service connected for cause of death, that the veteran was rated at 0% for PTB at the time of his death, although he was receiving the statutory minimum for PTB, and that there was no evidence to show that the veteran was entitled to a total evaluation for 10 continuous years prior to his death. R. at 400–02. Appellant then submitted a July 1960 letter (prepared for her son's earlier claim) written by Dr. McClendon (the attending physician at the time of the veteran's death), which stated:

As I understood it your Father Tom Lowery was drawing compensation from the V.A. on account of injury or disability while in the service during the World War No. 1.

If such was the case his death was aggravated by the said disability.

If you have proof of this you should see your local Service office and discuss it with him.

. . . .

P.S. I do not have any evidence of hid [sic] service disability nor that he was drawing anything from the V.A.

R. at 407. The VA again denied service connection for cause of death in February 1991, stating that Dr. McClendon's statement "does not relate any etiology between the arrested tuberculosis and the cause of death; nor does it show that the death was hastened or materially affected by [the veteran's] service connected tuberculosis." R. at 413.

In March 1991, appellant submitted a copy of her award of "death compensation" in 1938, arguing that the letter proved that service connection for the cause of death had already been established, and that she was entitled to DIC. R. at 411–12. Her claims were denied again. R. at 409. The VA's letter informing appellant of the denial stated that the "death compensation" she received was not paid as "benefits for a surviving spouse whose husband's death was considered service connected." R. at 424. In another letter written to clarify its position for appellant, the VA stated:

Death compensation was a program under which benefits were payable upon the death of the veteran because he was receiving disability compensation at the time of his death.

The laws governing this program have been repealed and now the only death benefits payable are [DIC], payable to a surviving spouse or child because the veteran's death was due to his service connected disability, or non-service connected death pension, which is based on the income of the claimant.

A review of your claims folder indicates that your claim to establish [service connection] for the cause of your husband's death was denied. This means that you[r] husband did not die from the disability for which he was receiving service connection.

R. at 426. In that letter, the VA also informed appellant that she may be entitled to a non-service-connected death pension, and appellant was given directions as to application procedures. *Id.*

Appellant filed a Notice of Disagreement in May 1991. R. at 428. She argued that

the Regional Office (RO) erroneously relied on the 1961 BVA decision, and that it should have relied on the 1937 decision which, she argued, established service connection for the cause of death. R. at 429. She pointed out that bronchitis was not mentioned in the January 1991 decision. R. at 431. She also argued that Dr. McClendon's statement provided compelling evidence that there was a "direct relation or link between respiratory disease, *anemia*, and heart disease." R. at 432.

In August 1991, the BVA remanded the issue of service connection for cause of death to the RO for de novo consideration. The BVA stated that this was necessary because "[i]n a letter dated in February 1938 [appellant] was notified that she was entitled to VA benefits, but it is not clear from that notification that service connection for the cause of death had been denied." R. at 452.

The RO issued a new denial in September 1991, stating that no heart condition was shown in service or until 1926, and no treatment was shown for tuberculosis from 1926 until the veteran's death. R. at 454. Appellant then submitted a statement that the veteran's tuberculosis was never "completely cured," and also submitted portions of the BETTER HOMES AND GARDENS MEDICAL GUIDE regarding bronchitis and PTB. R. at 461. She claimed that an alleged incident of "pain in the chest" while the veteran was in service was the start of his heart problems (R. at 462; S.R. at 16), and that she had personal knowledge that the veteran was unable to work from 1926 until the time of his death (R. at 464).

In December 1991, the BVA determined that: (1) neither cardiovascular disease nor anemia was incurred in or aggravated by service, or became manifest to a degree of 10% or more within one year following separation; (2) neither cardiovascular disease nor anemia was proximately due to or the result of the veteran's service-connected PTB and bronchitis; (3) a service-connected disability did not cause or contribute substantially or materially to the veteran's death; (4) appellant's claim of service connection for the cause of the veteran's death was not well grounded; and (5) the criteria for an award of benefits under 38 U.S.C. § 1318 had not been met. R. at 12–13.

## II. ANALYSIS

### A. Service connection for cause of death

Upon the death of a veteran due to a service-connected disability, his surviving spouse may receive DIC. *See* 38 U.S.C. § 1310. Pursuant to 38 C.F.R. § 3.312 (1993), the death of a veteran will be considered to be due to a service-connected disability when the evidence establishes that "such disability was either the principal or a contributory cause of death."

Appellant has the burden of submitting evidence sufficient to justify a belief that a claim is well grounded. 38 U.S.C. § 5107. A claim is well grounded if it is "plausible, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [38 U.S.C. § 5107]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Further, where the determinative issue involves medical causation, competent medical evidence that a claim is "plausible" or "possible" is required in order for the claim to be well grounded. *See Grivois v. Brown*, 6 Vet.App. 136 (1994); *Grottveit v. Brown*, 5 Vet.App. 91 (1993). This burden may not be met merely by presenting lay testimony, as lay persons are not competent to offer medical opinions. *Grivois, supra; Espiritu v. Derwinski*, 2 Vet.App. 492 (1992). The Court reviews the issue of well groundedness de novo. *See King v. Brown*, 5 Vet. App. 19 (1993).

With respect to appellant's claim of service connection for the cause of the veteran's death, the medical evidence regarding this issue consists of a 1937 death certificate and a July 1960 letter which were both written by Dr. McClendon. On the death certificate, a document written contemporaneously with the veteran's death, Dr. McClendon listed only coronary sclerosis as the principal cause of death and anemia as a contributory cause of death. He did not mention the veteran's (service-connected) PTB and bronchitis, and provided no other information re-

lating to causation. In the July 1960 letter, written approximately 25 years following the veteran's death, Dr. McClendon's opinion, stated in the light most favorable to appellant, was that the veteran's death was "aggravated" by a service-connected disability. However, Dr. McClendon stated in the letter that he had no evidence that the veteran had a service-connected disability or that the veteran was receiving compensation from the VA. In addition, he did not refer to any specific disability. Taking these two statements by Dr. McClendon together, his definitive statement made contemporaneously with the veteran's death that coronary sclerosis and anemia caused the veteran's death essentially negates any possibility for substantiation of his 1960 statement, made 25 years after the veteran's death, that the veteran's service-connected disabilities caused or contributed to the veteran's death. Therefore, taken collectively, these two statements do not provide enough evidence to make a claim of service connection for the cause of the veteran's death plausible, and thus well grounded. (In making this conclusion, the Court does not need to decide whether the July 1960 letter, if it had stood alone, would be enough evidence to establish a well-grounded claim.) Finally, all of the other evidence purporting to establish either that the veteran's coronary sclerosis and anemia should be service connected or that the veteran's PTB and bronchitis caused or contributed to his death was in the form of lay statements by appellant which cannot be used to demonstrate medical causation. Therefore, the Court concludes that appellant's claim of service connection for the cause of the veteran's death was not well grounded. *See Grivois, supra; Grottveit, supra.*

The Court notes that, although it is understandable why appellant believes that service connection was established for the cause of her husband's death because correspondence between 1938 and 1946 referred to her 1938 award of benefits as "compensation," the compensation program then in existence was not predicated on a service-related cause of death. The 1937 rating sheets, as well as subsequent correspondence to appellant by the VA, show that the veteran's death was never considered to be service connected.

### B. DIC under 38 U.S.C. § 1318

█ Pursuant to 38 U.S.C. § 1318(b)(1), the surviving spouse of a veteran who dies from an injury or disease which is not service connected is nevertheless entitled to receive DIC benefits in the same manner as if the veteran's death was service connected, provided that the veteran was continuously rated totally disabled for a period of 10 years or more preceding death. The degree of disability is a factual finding subject to the "clearly erroneous" standard of review. *See Harrison v. Principi,* 3 Vet.App. 532 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a "plausible basis" in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

The last medical evidence of appellant's PTB in 1926 stated that the condition was apparently arrested. Although appellant states that the veteran was unable to work from 1926 until his death, she has presented no evidence as to why the veteran would have been entitled to a total disability rating during that period *as a result of his service-connected disabilities.* *See* 38 C.F.R. § 4.16(a). Therefore, the BVA's conclusion that the evidence does not establish that the veteran was totally disabled due to a service-connected disability for 10 or more years immediately preceding his death was plausible, and thus not clearly erroneous. *See Gilbert, supra.*

### C. Death Pension

█ The Court has held that a claim for DIC benefits constitutes a claim for death pension. *Isenhart v. Derwinski,* 3 Vet.App. 177 (1992). This matter should have been addressed by the BVA. *Id.*

### III. CONCLUSION

Upon consideration of the above, the decision of the BVA is AFFIRMED. The issue of entitlement to death pension is REMAND-

ED to the BVA for proceedings consistent with this decision.