# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 96-1637

MARION L. TIMBERLAKE, APPELLANT,

v.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided Sep 15, 2000)

*Michael P. Horan*, of Washington, D.C., was on the pleadings for the appellant.

*John H. Thompson*, Acting General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Gregory W. Fortsch*, all of Washington, D.C., were on the brief for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*: The appellant, widow of veteran Norman Timberlake, appeals through counsel an October 15, 1996, Board of Veterans' Appeals (BVA or Board) decision that denied Department of Veterans Affairs (VA) dependency and indemnity compensation (DIC) benefits pursuant to 38 U.S.C. § 1310, on the basis that she had not presented a well-grounded claim that the veteran's death had been service connected, and also pursuant to 38 U.S.C. § 1318. Record (R.) at 11. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief, and both parties have filed responses to several Court supplemental briefing orders. The appellant has also filed a supplemental brief -- as to an April 22, 1999, decision of the Vice Chairman of the BVA that denied reconsideration of the BVA decision on appeal -- and the Secretary has filed a response. Finally, the appellant has filed eleven letters to the Clerk of the Court advising of supplemental authority [hereinafter notices of supplemental authority] pursuant to Rule 28(g) of this Court's Rules of Practice and Procedure (Rules). This appeal is timely, and the Court has jurisdiction pursuant to

38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the BVA decision and remand the appellant's DIC claim for readjudication.

## I. Background

Norman Edward Timberlake served in the U.S. Army from July 1943 to January 1946. R. at 114. In May 1989, a VA regional office (RO) awarded him service connection for PTSD, rated as 70% disabling, effective in March 1988. R. at 240-41. In July 1991, the Board awarded him service connection for residuals of trench foot (R. at 335-40), as to which award the VARO in August 1991 assigned a 10% rating, also effective in March 1988 (R. at 343). In October 1991, the RO awarded the veteran a rating of total disability based on individual unemployability (TDIU), effective September 1991 (R. at 357-58), and this 100% rating continued until his death in December 1994 (R. at 12 (BVA determination that "[a]t the time of the veteran's death . . . a [TDIU rating] had been in effect since September 1991"); R. at 419).

Private medical records dated in September 1994 from the Dexter Nursing Home showed that the veteran fell but suffered no "apparent injury". R. at 528. Upon his December 1994 death at a private medical facility, the death certificate listed "natural" as the manner of death and "[c]erebrovascular [a]ccident" as the cause of death. R. at 419. Pneumonia and chronic Coumadin use were listed as "[o]ther significant conditions contributing to death but not resulting in the underlying cause". *Ibid.* (Coumadin is a "trademark for preparations of warfarin sodium", an "anticoagulant". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 387, 1839 (28th ed. 1994). It "is indicated for the prophylaxis and/or treatment of venous thrombosis and its extension, and pulmonary embolism". PHYSICIANS' DESK REFERENCE 929 (53d ed. 1999).)

In January 1995, the appellant filed a VA Form 21-534 claim for DIC benefits on which she checked a box indicating that she was "claiming that the cause of [the veteran's] death was due to service". R. at 445-48. That same month, the RO denied, inter alia, service connection for the cause of the veteran's death and entitlement to DIC benefits pursuant to 38 U.S.C. § 1318. R. at 450-52. Later that month, the Board remanded a claim that had been filed by the veteran during his lifetime for special monthly compensation based on the need for aid and attendance. R. at 460-61. In conjunction with that remand, the Board, clearly unaware of his recent death, ordered that the

2

"veteran . . . be afforded another VA examination". *Ibid.* The Board also ordered the RO to "formally adjudicate the issue of entitlement to service connection for hypertension" after finding that the claim "was received in February 1993". R. at 458, 461.

In March 1995, the appellant filed a Notice of Disagreement (NOD) as to the January 1995 RO decision; she contended that the veteran's PTSD had caused him to "fall[ ] numerous times" and appeared to suggest that a fall had caused his death. R. at 463. Specifically, she stated that the veteran "died from trauma to the brain which caused profuse bleeding in the brain and because he was on Coumadin, it was inoperable." *Ibid.* The RO's March 1995 Statement of the Case (SOC) continued to deny the claim on the ground that "[t]he death certificate show[ed] the cause of death as cerebrovascular accident", a condition not found in the veteran's SMRs. R. at 471. The RO also noted that although the veteran had been receiving a TDIU rating since September 1991, the appellant's entitlement to DIC under 38 U.S.C. § 1318 was "not established because a total evaluation had not been in effect for 10 continuous years immediately preceding death." R. at 470-71. In her Substantive Appeal to the Board, the appellant argued again that the veteran "was 100% service connected disabled at the time of his death" and that the cause of his death was "due to a fall" in December 1995. R. at 474. She stated that she was attempting to have the death certificate "legally corrected" to reflect that fact. *Ibid*. In addition, she stated that the veteran's "service[-]connected disabilities were well documented on his discharge and [that] he should have received compensation from that time". R. at 475. She requested compensation "for 47 years of hell" that she went through with her husband "with no help" from VA and suggested that the veteran would not have suffered as much if VA had treated him differently during his lifetime. R. at 476.

In August 1995, the appellant submitted a letter to the RO that again indicated that she was attempting to have the death certificate changed, and that included as enclosures additional medical records. R. at 497-533. The RO considered the evidence and again denied her DIC claim, issuing a Supplemental SOC (SSOC) that same month. R. at 539-41. In October 1995, she submitted a letter to the RO that again stated that the veteran had died due to head trauma from a fall caused by medications that he was taking for his service-connected PTSD and, as support for her position, cited to the "1993 edition" of THE PHYSICIAN'S COMPENDIUM OF DRUG THERAPY. R. at 545. In addition, she mentioned the veteran's claims pending during his lifetime that were addressed in the January

3

1995 BVA remand decision (R. at 460) issued subsequent to his death; she stated: "I . . . notified [the RO of the veteran's] . . . death and asked what I should do about this remand as [the veteran] wasn't around for tests and the like. They said I should do nothing, that I would be sent a form to fill out. Well, it's been eleven months and I've not seen or heard any further word on it". R. at 546.

In November 1995, the RO issued a decision that continued to deny service connection for the cause of the veteran's death and that construed the appellant's "request[ as to] the status" of the veteran's "appeal pending at the time of his death" as "a claim for accrued benefits." R. at 548. The RO then denied the accrued-benefits claim because there was no evidence of hypertension during service or within one year following service and "no additional evidence to show [that] the veteran was in need of aid and attendance due solely to his service[-]connected disabilities". *Ibid.* A November 1995 SSOC referred to the appellant's "copy of the veteran's medications and possible side effects" (i.e., R. at 545), but continued to deny the DIC claim. R. at 553.

An informal brief submitted to the BVA on behalf of the appellant by the Paralyzed Veterans of America raised the following issues: (1) "[T]hat the veteran's service-connected disabilities did contribute to his death" because he died "due to an apparent cerebrovascular accident . . . on December 14, 1994, while in a hospital under VA contract"; (2) that the appellant wished to pursue a contention of "potential entitlement . . . under 38 U.S.C. § 1151"; and (3) that in the RO's "consideration of entitlement to accrued benefits" it had failed to "conduct a thorough review of the entire claims folder" for instances of CUE, specifically asserting CUE as to the May 1989 RO decision's failure to consider certain VA regulatory provisions that would have entitled him to a 100% rating. R. at 567.

In the October 15, 1996, BVA decision here on appeal, the Board first "referred to the RO" the appellant's claim for DIC benefits pursuant to section 1151 (disability resulting from VA medical treatment) and her claim of CUE in the May 1989 RO decision rendered to the veteran. R. at 10-11. The Board then denied as not well grounded the appellant's claim for service connection for the cause of the veteran's death "[b]ecause the appellant has not presented any competent medical evidence which links the veteran's fatal cerebrovascular accident to a period of service or to his service-connected PTSD or treatment therefor[ ]". R. at 19. In addition, the Board noted that in order for the appellant to qualify for DIC the veteran must have been in receipt of a 100% rating for

4

10 years prior to his death and that, in this case, he had been in receipt of a 100% rating only "since September 1991". R. at 19-20. The Board then posited that even if the appellant "prevails on a claim of [CUE]" as to the 70% rating assigned in May 1989 (R. at 240-41), "such a [100% rating based on CUE] would still not be in effect for at least 10 years preceding the death of the veteran since the effective date, March 2, 1988, would not change", having not been part of the CUE claim referred to the RO. R. at 20. In January 1997, the Board issued its "Certified List", i.e., "the inclusive list of evidence and material of record deemed relevant in the adjudication of the issue(s) set forth in [its] decision." R. at 570-76.

## II. Analysis

### A. DIC Based on Service Connection for Cause of Veteran's Death

Pursuant to 38 U.S.C. § 1310, DIC is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Darby v. Brown*, 10 Vet.App. 243, 245 (1997); *Hanna v. Brown*, 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1999). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1999). To be a contributory cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c) (1999).

A claim for DIC is a new claim; therefore, like any other claim for VA benefits, a DIC claim must be well grounded. *See Darby, supra*; *Johnson (Ethel) v. Brown*, 8 Vet.App. 423, 426 (1995); 38 U.S.C. § 5107(a) ("person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded"). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). For a DIC claim based on service connection for the cause of death to be well grounded, there generally must be (1) medical evidence of a current disability; (2) medical

5

evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Elkins v. West*, 12 Vet.App. 209, 213 (1999) (en banc) (citing *Caluza*, *supra*, and *Epps v. Gober*, 126 F.3d 1464, 1468 (Fed. Cir. 1997) (expressly adopting definition of well-grounded claim set forth in *Caluza*, *supra*)). This evidence as to these three *Caluza* elements need meet only a threshold that is "'unique and uniquely low'" in order to show well groundedness; that is, the "claim need only be 'plausible'." *Beck v. West*, 13 Vet.App. 535, 540 (2000) (quoting *Hensley v. West*, 212 F.3d 1255, 1261-62 (Fed. Cir. 2000)). In terms of a DIC claim based on cause of death, the first *Caluza* requirement, "evidence of a current disability, will always have been met (the current disability being the condition that caused the veteran to die)". *Carbino v. Gober*, 10 Vet.App. 507, 509 (1997), *aff'd sub nom. Carbino v. West*, 168 F.3d 32 (Fed. Cir. 1999).

The credibility of the evidence presented in support of a claim is generally presumed when determining whether it is well grounded. *See Beck*, *supra* (holding that, at well-groundedness stage, Board may not weigh credibility of evidence submitted in support of claim); *Elkins*, 12 Vet.App. at 219 (citing *Robinette v. Brown*, 8 Vet.App. 69, 75-76 (1995)). A BVA determination that a claim is not well grounded is a question of law that is subject to de novo review by this Court. *See Hensley*, 212 F.3d at 1263; *Robinette*, 8 Vet.App. at 74; *cf. Nolen v. Gober*, __ F.3d __, No. 99-7173, 2000 WL 1055987, at *3 (Fed. Cir. Aug. 1, 2000) ("in a case . . . in which a claim has been deemed well grounded [by the BVA,] . . . the Court . . . would have no reason to reconsider the question of well groundedness"). However, BVA findings of fact pertaining to the question of well groundedness are to be reviewed by this Court under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hensley v. West*, 212 F.3d at 1263. Under this deferential standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, . . . [the Court] cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

*1. BVA Obligation to Address Every Item on Certified List.* The appellant's first argument is that the Board failed to address in its decision "60 or more pieces of evidence listed in the [Board's January 1997] certified list" (R. at 570-76). Brief (Br.) at 3. Her argument appears to be that remand

is warranted solely based on the Board's failure to address explicitly these items of evidence, regardless of the content of the items.

The extent of the Board's statutory duty to consider and, in some cases, address in its decision, the evidence of record is set forth in 38 U.S.C. § 7104, which provides in pertinent part:

**§ 7104.  Jurisdiction of the Board**

(a) All questions in a matter which under section 511(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board. ***Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.***

. . . .

(d) Each decision of the Board shall include--

(1) ***a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact*** and law presented on the record . . . .

38 U.S.C. § 7104(a), (d)(1) (emphasis added).  A significant distinction is made within the section 7104 passages quoted above; subsection (a) requires the Board to "***base***[ ]" its decision "on the ***entire*** record in the proceeding" and to make its decision "upon consideration of ***all evidence and material of record***", 38 U.S.C. § 7104(a) (emphasis added); however, subsection (d) requires that the BVA provide "***a written statement***" only as to "all ***material*** issues of fact", 38 U.S.C. § 7104(d)(1) (emphasis added).  Similarly, the applicable VA regulation requires that "[d]eterminations as to service connection will be based on ***review*** of the entire evidence of record".  38 C.F.R. § 3.303(a) (1999) (emphasis added).  The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that the regulatory requirement that VA "review . . . the entire evidence of record" is not a requirement that the adjudicator "analyze and discuss" all such evidence.  *Gonzales v. West*, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).  The Federal Circuit concluded: "If silence leaves veterans lacking 'assurance' . . . , then so be it".  Hence, the statute and VA regulation refute the appellant's argument that a remand is required based on the BVA's failure to address every item of evidence on its certified list.

Moreover, the Court has summarized the Board's duty in this regard as follows:

The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record . . . . The statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. . . . To comply with this requirement, the Board must analyze the

credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, ***and provide the reasons for its rejection of any material evidence favorable to the veteran***.

*Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (emphasis added) (citing, inter alia, *Gilbert*, 1 Vet.App. at 57).

The appellant has not argued that the Board's decision is so inadequate that she cannot "understand the precise basis for the Board's decision" or that it is inadequate for "review in this Court." *Ibid.* Similarly, she has not argued (as to these 60 pieces of evidence) that the Board has failed to "provide the reasons for its rejection of any material evidence ***favorable to the veteran***". *Ibid.* (emphasis added). In fact, she has not analyzed in any manner the evidence that she asserts was not addressed by the Board; she simply lists the 60 items in her brief without providing any discussion as to their nature. *See* Br. at 4. Our caselaw requires only that the Board address its reasons for rejecting evidence that is favorable to the veteran. The appellant has not asserted such a failure in this case, and the Court is not inclined to conjure such an argument on her behalf.

The Court's reasoning above, as to the statute, regulation, and caselaw, also resolves the appellant's contention as to the pertinence of a June 8, 1993, VA memorandum described in her brief. That VA memorandum is not attached to her brief, and the appellant does not provide the Court with sufficient information to enable the Court to procure a copy of that memorandum on its own; however, she quotes a passage from the VA memorandum and asserts that it requires the Board to provide a certified list as to all items of evidence "**specifically relevant** in arriving at the [Board's] decision". Br. at 3 (discussing what appellant describes as "Secretary's Memorandum (June 8, 1993)"). Even if the memorandum says what the appellant asserts that it says, the *relevance* of a particular item is not dispositive of the *materiality* of that item, for purposes of section 7104(d)(1), to the basis for the Board's denial of the claim. The appellant's implication that the appearance of an item on the certified list elevates that item to a "material" status for purposes of section 7104(d)(1) is simply incorrect; it is certainly possible that any of those "60 or more pieces of evidence" did not support the merits of her claim. *See Evans (Samuel) v. Brown*, 9 Vet.App. 273, 283-84 (1996) (distinguishing "relevant evidence" ("'[e]vidence tending to prove *or disprove* an alleged fact' (emphasis added)") from "material evidence" (evidence that is "probative" or "'tend[s] to prove, or actually prov[es] an issue'") (citing BLACK'S LAW DICTIONARY 1203 (6th ed. 1990)). For example,

an NOD is always specifically relevant to the Board's decision because it serves as the jurisdictional predicate for BVA review. *See* 38 U.S.C. § 7105(a) ("[a]ppellate review will be initiated by a[n NOD]").

However, once the NOD requirement is satisfied, the ***content*** of the NOD may or may not raise an issue of material fact that the BVA would be required to address in its written decision. Similarly, SMRs or other medical records that were examined for the purpose of ensuring that, as the BVA found in this case, "the record is devoid of any competent medical evidence" of nexus (R. at 19), do not necessarily present an issue of material fact that requires each individual SMR to be referenced in the BVA decision (because it can consider the SMRs in toto). Many other procedural documents (such as a Substantive Appeal, a statement of appellate rights, signed medical records release forms, etc.) may be relevant to a determination as to whether a particular case is ripe for appellate consideration or as to whether the RO has conducted all appropriate development and adjudication, but those documents also need not necessarily be addressed in the Board's decision in order for that decision to be in compliance with section 7104(d)(1). Based on the statute, regulation, and caselaw, the Court cannot conclude that the BVA in this case erred simply by failing to reference in its decision each item of evidence contained on its certified list. The VA memorandum quotation in the appellant's brief does not, on its face, suggest an opposite conclusion.

***2. Medical-Textbook Evidence.*** The appellant argues that her claim should be considered well grounded based on particular evidence not addressed by the Board, that is, her citation to the "1993 edition" of a treatise, THE PHYSICIAN'S COMPENDIUM OF DRUG THERAPY, in her October 1995 letter to VA. R. at 545. (The Court notes that, curiously, this item of evidence is ***not*** one of the items listed in her brief as evidence not considered by the BVA, notwithstanding that the BVA in fact did ***not*** address this evidence. *See* Br. at 4.) She argues that that treatise evidence, coupled with the medical evidence of the medications that her husband was taking prior to his death, constitutes plausible medical evidence of a nexus between the medications that he took for his service-connected PTSD and the cerebrohemmorhage that caused his death. Br. at 14-16.

This Court has previously held that, in order to establish a well-grounded service-connection claim by means of a medical treatise, the treatise evidence must "not simply provide speculative generic statements not relevant to the veteran's claim". *Wallin v. West*, 11 Vet.App. 509, 514 (1998).

Instead, the treatise evidence, "standing alone", must discuss "generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion." *Ibid.* (citing *Sacks v. West*, 11 Vet.App. 314, 317 (1998)); *see also Libertine v. Brown,* 9 Vet.App. 521, 523 (1996) (medical treatise evidence must demonstrate connection between service incurrence and present injury or condition); *Beausoleil v. Brown*, 8 Vet.App. 459, 463 (1996) ("generic statement about the *possibility* of a link between chest trauma and restrictive lung disease . . . [is] too general and inconclusive to make the claim well grounded"). *But see Mattern v. West*, 12 Vet.App. 222, 227 (1999) ("[g]enerally, an attempt to establish a medical nexus to a disease or injury solely by generic information in a medical journal or treatise 'is too general and inconclusive' to well ground a claim" (quoting *Sacks*, *supra*).

The Federal Circuit in *Hensley v. West*, in considering the use of treatise evidence to support the medical-nexus requirement of a well-grounded claim, stated: "A veteran with a competent medical diagnosis of a current disorder may invoke an accepted medical treatise in order to establish the required nexus; in an appropriate case it should not be necessary to obtain the services of medical personnel to show how the treatise applies to his case." *Hensley*, 212 F.3d at 1265 (citing *Wallin*, *supra*). The Federal Circuit then held that on remand that treatise evidence "should be evaluated to see if it supports a nexus . . . sufficient to meet the low threshold of the well[-]grounded claim requirement." *Ibid.*

In the instant appeal, the Board did not address in any manner the treatise evidence referenced by the appellant in her October 1995 letter to VA. *See* R. at 9-21 (BVA decision on appeal). In fact, the Board stated that the appellant's submissions to VA consisted of "lay assertions" and that she had "not presented *any* competent medical evidence which links the veteran's fatal cerebrovascular accident to a period of service or to his service-connected PTSD or treatment therefore". R. at 11 (emphasis added). Thus, it appears that the Board failed even to consider the appellant's citation to a medical treatise. In the past the Court has addressed such evidence in the first instance. *See, e.g., Wallin* and *Libertine*, both *supra*. However, in view of the Federal Circuit's instruction to the Court in *Hensley* to "remand the case to the BVA so it can reevaluate whether Mr. Hensley has stated a well[-]grounded claim", *Hensley*, 212 F.3d at 1265, the Court holds that an "evaluat[ion]" of treatise

11

evidence should be made in the first instance by the BVA. Thus when, as here, the Board fails to make any findings whatsoever as to medical-treatise evidence cited by an appellant, the Court will vacate the Board's decision and remand for the Board to "evaluate[ that evidence] to see if it supports a nexus . . . sufficient to meet the low threshold of the well[-]grounded claim requirement." *Hensley*, 212 F.3d at 1265; *see also Beck*, *supra* (emphasizing the low threshold of well groundedness).

   *3. Remaining Arguments Set Forth in Appellant's Brief.* Because we have decided that this DIC claim must be remanded for resolution of the question of service connection for the cause of death in view of the above-discussed medical-treatise evidence, we need not address in detail the remaining arguments set forth in the appellant's brief. We note, however, that a panel of the Court has no power to overrule the Federal Circuit's opinion in *Epps*, 126 F.3d 1464. Br. at 9; *see McQueen v. West*, 13 Vet.App. 237, 242-43 (1999) ("[t]his panel is bound by the opinion of the . . . Federal Circuit"); *see also Schroeder v. West*, 12 Vet.App. 184 (1999) (en banc order) (recognizing that Federal Circuit in *Epps* "expressly rejected" virtually identical argument to that raised here "and that that case is binding on this Court"), *overruled on other grounds*, *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (specifically not considering this Court's disposition of the appellant's arguments regarding *Epps*). (The Court is aware that the Federal Circuit appears to be reexamining *Epps*, by virtue of an en banc unpublished order that it issued in *Brock v. Gober*, No. 98-7037 (Fed. Cir. Aug 22, 2000); however, *Epps* continues to bind us unless and until it is overruled. *See Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991).) Likewise, a panel may not issue a decision that the VA ADJUDICATION PROCEDURE MANUAL, M21-1, provisions regarding the duty to assist prior to the submission of a well-grounded claim are binding on VA, because that issue has already been decided to the contrary by *Morton v. West*, 12 Vet.App. 477 (1999), *en banc review denied*, 13 Vet.App. 205 (1999), *appeal dismissed and matter remanded sub nom. Morton v. Gober*, No. 99-7191 (Fed. Cir. Aug. 17, 2000) (remanding to this Court for determination whether to vacate its decision in *Morton v. West*). *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (decision by panel of this Court is binding on future panels because "[i]t is in this way we assure consistency of our decisions"); *Tobler*, *supra*; *cf. Schroeder*, 212 F.3d at 1271 (recognizing that the Court "addressed this issue" in *Morton*). *But cf. McCormick v. West*, __ Vet.App. ___, ___, No. 98-48, 2000 WL 1173791, at *7 (Aug. 18, 2000) (distinguishing *Morton* in cases where VA has failed to

obtain SMRs or VA medical records prior to receiving well-grounded claims). If the *Morton* opinion is vacated by this Court in view of Mr. Morton's having died while the case was on appeal to the Federal Circuit, *see Morton v. Gober*, *supra*, the appellant is free to raise these arguments to the Board and to this Court if necessary.

The Court also notes the appellant's contention that she has been deprived of what she refers to in her brief as "administrative due process". Br. at 5. The Court finds it difficult to understand this contention. She argues that "[s]he did not have notice that" the issue whether the veteran had suffered from service-connected hypertension and cerebrovascular disease "would ultimately decide the merits of her claim for service connection for the cause of the veteran's death" (Br. at 7-8), and, in turn, that "[s]he did not have notice that she should present evidence and argument on th[os]e issue[s]". Br. at 8. She adds that the Board did not consider whether its addressing those two matters without notification to her had resulted in prejudice to her. *Ibid.* (citing *Bernard v. Brown*, 4 Vet.App. 384, 393-93 (1993) ("several statutory and regulatory provisions establish extensive procedural requirements to ensure a claimant's rights to full and fair assistance and adjudication in the VA claims adjudication process" and VA claimants must be afforded the "full benefits of these procedural safeguards" in those provisions). In *Sutton v. Brown*, the Court applied *Bernard*, *supra*, as follows:

> [W]hen the Board addresses in its decision a question that has not been addressed by the RO, ***it must consider*** (1) whether the claimant has been given both adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and (2) whether, if such notice has not been provided, the claimant has been prejudiced thereby . . . .

*Sutton*, 9 Vet.App. 553, 564 (1996) (emphasis added) (citing *Bernard*, 4 Vet.App. at 394)).

As to that part of her argument regarding hypertension, the appellant is incorrect that the matter of "service connection for hypertension" was an issue upon which the BVA "ultimately decide[d] the merits of her claim". Br. at 8. The BVA ***did not address in its decision*** the matter of service connection for hypertension and did not, therefore, resolve this appeal based on that matter. *See* R. at 9-11. The Board's conclusion was that "[b]ecause the appellant has not presented any competent medical evidence which links the veteran's fatal cerebrovascular accident to [the] period of service or to his service-connected PTSD or treatment therefor[ ], or residuals of trenchfoot, her

13

claim for the cause of the veteran's death is not well grounded and must be denied." R. at 11. Nor should the BVA have addressed the matter of hypertension. Throughout the adjudication of this claim, the appellant has consistently asserted that the veteran's death was due to a fall that caused trauma to the veteran's brain (R. at 445-48, 463, 474, 497, 545); at no time has she asserted that hypertension was incurred in service and contributed to the veteran's death. Although she submitted in October 1995 a statement listing all of the medications that the veteran had been taking prior to his death, including blood-pressure medication, and asserted that his death had been due in part to those medications, she specifically referred to, as the basis for her claim, the "meds [that] were given because of service[-]connected disability of PTSD to control him." R. at 546. Thus, the appellant's contention is unfounded that the matter of service connection for hypertension was unfairly decided -- or decided at all -- by the BVA.

The appellant also contends that she was not on notice that the Board would determine that "the record is devoid of any competent medical evidence relating the onset of cerebral vascular disease and the fatal cerebral vascular accident to [his] military service" and that the veteran's SMRs "d[id] not show that he had cerebrovascular . . . problems". R. at 11. In fact, the appellant was notified repeatedly by the RO that it had considered the cause of the veteran's death to have been a cerebrovascular accident and that that condition was not service connected and did not show up in the veteran's SMRs (R. at 450, 471, 539). Hence, the facts of this case do not bear out her assertion that the BVA addressed an issue not addressed by the RO.

*4. BVA's Reconsideration Procedure*. In a supplemental brief filed on October 20, 1999, the appellant urges this Court to vacate an April 22, 1999, decision of the BVA Vice Chairman to deny her motion for reconsideration of the BVA decision on appeal. Supplemental (Suppl.) Br. at Exhibit 1. Although this matter appears to be mooted by the Court's decision to vacate the BVA decision for which the BVA Vice Chairman denied reconsideration, the Court will briefly address this argument.

The Court has jurisdiction over the Vice Chairman's denial of his motion for BVA reconsideration, based on *Mayer v. Brown,* 37 F.3d 618 (Fed. Cir. 1994) (when this Court has jurisdiction over underlying BVA decision, it also has jurisdiction over appeal of denial of motion to reconsider that decision). The Secretary does not argue to the contrary. *See generally* Secretary's

14

November 19, 1999, Response to Appellant's Suppl. Br. The appellant's challenge is premised upon her mistaken interpretation of a precedential opinion of VA's Office of General Counsel. Suppl. Br. at 8-9 (discussing VA Gen. Coun. Prec. 89-90 (Aug. 27, 1990) [hereinafter G.C. Prec. 89-90]). The appellant argues that, pursuant to G.C. Prec. 89-90, the Secretary may not utilize the "obvious error" standard in determining *whether or not to grant reconsideration* of a BVA decision, and thus that the BVA Vice Chairman erred in this case by applying such a standard.

The VA General Counsel's opinion framed the "QUESTION PRESENTED" therein as follows: "When . . . the Chairman of the Board . . . *orders reconsideration* . . . , what type of review is to be conducted by the reconsideration section[?]" The opinion also "HELD" that, after reconsideration has been granted, "[t]he reconsideration section then sits in the same position as would the Board panel initially deciding the appeal, i.e., it should employ the same standard of review". Thus, by its own terms, G.C. Prec. 89-90 applies only after reconsideration has been granted and does not forbid the BVA Chairman from applying the "obvious error" standard as to whether to grant a motion for reconsideration. The fact that the Secretary has retained the concept of "obvious error" in his regulation regarding when "[r]econsideration of an appellate decision may be accorded" is a further indication that G.C. Prec. 89-90 did not intend the result urged by the appellant in this case. 38 C.F.R. § 20.1000(a) (1999) (stating that reconsideration of BVA decision is to be accorded, inter alia, "[u]pon allegation of obvious error of fact or law"). The Court expresses no opinion as to the validity of G.C. Prec. 89-90, which is not challenged by the appellant in this case.

The Court notes that neither party has objected to consideration by this Court in the first instance of the documents attached to the appellant's Supplemental Brief as exhibits 1-3, notwithstanding that those documents postdate the BVA decision here on appeal. The Court is precluded by statute from including in the record on appeal (ROA) and generally from considering any material that was not contained in the "record of proceedings before the Secretary and the Board". 38 U.S.C. § 7252(b); *see also Wilhoite v. West*, 11 Vet.App. 251, 252 (1998) (per curiam order); *Bell v. Derwinski*, 2 Vet.App. 611, 612-13 (1992) (per curiam order); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) (review in Court shall be on record of proceedings before Secretary and Board). However, the Court has held that it may review documents relevant to the

question whether the Court has jurisdiction over a motion for BVA reconsideration, and that such documents "should be submitted separately in the form of a Supplemental ROA." *Bennett v. Brown*, 10 Vet.App. 178, 181 (1997). In this case, the Court does not need to review the appended documents in order to conclude that it has jurisdiction over the Vice Chairman's decision not to grant reconsideration. *See Mayer*, *supra*. However, we reiterate that, just as in *Bennett*, *supra*, it is preferable that such documents "be submitted separately in the form of a Supplemental ROA", and thus that they be preceded by a counter designation of the record (as well as, in appropriate cases such as this one, a motion to permit the filing out-of-time of the counter designation), so as to afford the opposing party the benefit of the Court's procedural rules regarding such matters. *See* U.S. VET. APP. R. 10(b), (c), 11(b). In view of the lack of opposition by the Secretary to the Court's consideration (which we need to do in this case only for the purposes of verification of the filing and denial of a motion for BVA reconsideration) of the documents appended to the appellant's supplemental brief, we will, nonetheless, not delay the resolution of this appeal by requiring further procedural filings in this case.

### B. 38 U.S.C. § 1318 DIC Claim

In addition to payment of DIC pursuant to 38 U.S.C. § 1310 when a veteran dies due to a service-connected disability, *see Darby* and *Hanna*, both *supra*, DIC benefits are payable "in the same manner as if the veteran's death was service connected" on three other theories provided for in chapter 13 of title 38, U.S. Code. Specifically, pursuant to 38 U.S.C. § 1318(b), the surviving spouse of a veteran who dies from an injury or disease that is ***not*** service connected may receive DIC under certain specified circumstances. In *Cole v. West*, the Court described these three other theories as follows:

> [U]nder the umbrella of a general section 1318 DIC claim, a VA claimant may receive section 1318 DIC under any one of the three following theories: (1) If the veteran was in actual receipt of compensation at a total disability rating for 10 consecutive years preceding death, *see* 38 U.S.C. § 1318(b)(1); (2) if the veteran would have been entitled to receive such compensation but for CUE in previous final RO decisions and certain previous final BVA decisions . . . ; or (3) if, on consideration of the "evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable", the veteran hypothetically would have been entitled to receive a total disability rating for a period or periods of time, when added to any period during which the veteran

16

actually held such a rating, that would provide such a rating for at least the 10 years immediately preceding the veteran's death, *see Carpenter* [*(Angeline) v. West*, 11 Vet.App. 140, 147 (1998)]; *Green*[ *v. Brown*], 10 Vet.App. [111,] 118 [(1997)].

*Cole*, 13 Vet.App. 268, 274 (1999); *see also* 38 C.F.R. § 3.22(a) (1999); *DIC Benefits for Survivors of Certain Veterans Rated Totally Disabled at Time of Death*, 65 Fed. Reg. 3,388 (2000) (amending § 3.22(a)); *Marso v. West*, 13 Vet.App. 260, 264-67 (1999); *Wingo v. West*, 11 Vet.App. 307, 309-12 (1998). Facially, theory (1) in the above quotation does not apply here.

In *Carpenter (Angeline)*, the Court quoted with approval a VA issuance that directed: "'***In all cases in which service connection for cause of death is denied*** and the veteran has a totally disabling service[-]connected condition at the time of his death the issue of entitlement under 38 U.S.C. § [1318] must be considered'". *Carpenter (Angeline)*, *supra* (emphasis added) (quoting VA DVB Circular 21-78-10, Implementation of Public Law 95-479, Change 1, p. 4 amendment to ¶ 11.d. (Nov. 14, 1978)). The Court concluded that a section 1318 "entitled to receive" claim was "intrinsic" to a general section 1318 claim. In the instant case, the veteran was rated 100% disabled at the time of his death (R. at 12, 357-58); therefore, VA has been correct in this case, insofar as it followed the requirements of the DVB Circular cited with approval in *Carpenter (Angeline)*, in consistently adjudicating the appellant's DIC claim under section 1318 after VA had determined that no DIC award could be made pursuant to section 1310 (*see, e.g.*, R. at 450-52 (January 1995 denial of appellant's January 1995 DIC claim under sections 1310 and 1318)). However, for the following reasons, the Court will remand as to the section 1318 DIC claim as well.

First, the Court notes that just as an "entitled to receive" argument is "an intrinsic part of" a DIC claim adjudicated under section 1318, so, too, are all section 1318 bases for DIC an intrinsic part of a DIC claim in those "cases in which service connection for cause of death is denied and the veteran has a totally disabling service[-]connected condition at the time of his death". *Carpenter (Angeline)*, *supra*. In this case, the Board has already considered the appellant's claim in the context of section 1318, apparently for the very reasons set forth above in this paragraph. However, because the Court has found error in the Board's adjudication of the DIC claim pursuant to section 1310 and because the veteran had a totally disabling service-connected disability at the time of his death, the Board will be required, if it rejects the section 1310 basis for DIC, to consider the appellant's DIC claim on the basis of section 1318.

Moreover, the Federal Circuit recently held in *Schroeder v. West*, as to a claim for service connection, that "once a veteran has properly made out a well-grounded claim for a current disability as a result of a specific in-service occurrence or aggravation of a disease or injury, the agency's duty to assist pursuant to section 5107(a) . . . attaches to the investigation of *all* possible in-service causes of that current disability". *Schroeder*, 212 F.3d at 1271. The Federal Circuit then vacated an order of this Court affirming a BVA decision that the veteran in that case had not presented a well-grounded direct-service-connection claim where the Court had also remanded the BVA's denial of that service-connection claim for consideration of a regulatory-presumption basis for service connection. *Id.* at 1268, 1271-72. In other words, where one theory or basis for the allowance of a service-connection claim is well grounded, all possible theories for service-connection must be considered during the merits adjudication. The Court sees no material distinction between the service-connection claim at issue in *Schroeder* and the DIC claim at issue in the instant case. Nor did the appellant at any time expressly limit her DIC claim to entitlement pursuant to section 1310 or any other particular legal avenue of relief. Indeed, from the very outset of the adjudication of the appellant's DIC claim, the RO applied section 1318 as well as section 1310.

The Court's application of *Schroeder* to DIC claims is consistent with the principle that "VA is required to apply all relevant law in adjudicating the claim even though not raised by the appellant". *Norris (Robert) v. West*, 12 Vet.App. 413, 417 (1999); *cf.* 38 U.S.C. § 7104(d)(1) (BVA to address in its decision "all material issues of . . . law"). Hence, the Court holds, in accordance with *Schroeder* and *Carpenter (Angeline)*, both *supra*, that because the appellant's DIC claim was erroneously denied by the BVA as not well grounded under section 1310 and the veteran had been rated as 100% service-connected disabled at the time of his death, our remand of that erroneously denied DIC claim carries with it a requirement that the Board reconsider the DIC claim under section 1318 if it is found to be well grounded on any DIC theory. Moreover, should the appellant, on remand, submit new argument pertinent to the question of an award of DIC pursuant to section 1318, the Board would be required to resolve such additional argument. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (holding that appellants are free to submit additional evidence and argument on remanded claims).

Of course, if further consideration of section 1318 is required on remand, such consideration must be undertaken in accordance with the Court's caselaw regarding that statutory provision. *See Cole*, *Marso*, *Wingo*, *Carpenter (Angeline)*, and *Green*, all *supra*. In that regard, the Court notes the requirement that a DIC claimant who would seek to establish entitlement pursuant to a section 1318 CUE claim

> must provide at least the following: The date or approximate date of the decision sought to be attacked collaterally, or otherwise provide sufficient detail so as to identify clearly the subject prior decision, and must indicate how, based on the evidence of record and the law at the time of the decision being attacked, the veteran would have been entitled to have prevailed so as to have been receiving a total disability rating for ten years immediately preceding the veteran's death. *See Crippen*[ *v. Brown*, 9 Vet.App. 412, 420 (1996),] and *Fugo*[*v. Brown*, 6 Vet.App. 40, 44 (1993)].

*Cole*, 13 Vet.App. at 276-77. In that connection, the implicit restriction in 38 C.F.R. § 20.1106 (1999) (regarding effect of prior VA decisions as to veteran in "issues involved in a survivor's claim for death benefits") would apply in this case because the appellant's claim was filed after the March 1992 effective date of that regulation and thus, because in this case the RO's May 1989 decision that denied a 100% rating for the veteran's service-connected PTSD (R. at 240-41) constituted "a prior final VA determination [that] had denied a veteran a total disability rating, so that the veteran had not been rated totally disabled for 10 continuous years prior to his or her death," the appellant must, at a minimum, "demonstrate CUE in th[at] prior VA determination in order to establish eligibility under section 1318(b)(1)". *Marso*, 13 Vet.App. at 266. If the appellant should prevail on such a CUE claim as to the 1989 RO decision, she would then still have to demonstrate that a 100% rating should have been in effect from at least December 1984. In that regard, if there are no other final VA decisions that might prevent her from showing a 100% rating back to that date -- 10 years before the veteran's death -- she would still have recourse to the third possible section 1318 basis for DIC discussed in *Cole*, 13 Vet.App. at 174, that is, whether "the veteran hypothetically would have been entitled to receive a total disability rating for a period or periods of time, when added to any period during which the veteran actually held such a rating, that would provide such a rating for at least the 10 years immediately preceding the veteran's death". That is because the recent amendment to 38 C.F.R. § 3.22(a), assuming that it was validly promulgated and effective upon its publication on

January 21, 2000 (notwithstanding that it was promulgated without a notice-and-comment period), *see* 65 Fed. Reg. 3,388, which defined "entitled to receive" so as to exclude the "hypothetically" entitled-to-receive section 1318(b) basis recognized in *Wingo*, *Green*, and *Carpenter (Angeline)*, all *supra*; *see also Cole* and *Marso*, both *supra*, could not, under *Karnas v. Derwinski*, be applied to this case if to do so would lead to a less advantageous result to the appellant. *See Karnas*, 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so").

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates the October 15, 1996, BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1310, 1318, 5107, 7104(a), (d)(1); 38 C.F.R. §§ 3.22(a), 20.1106; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky*, 12 Vet.App. at 372-73 (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.