Citation Nr: 1126165 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 05-31 914 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial rating in excess of 20 percent for residuals of an enlarged prostate between June 1, 2003 and April 8, 2010.

2. Entitlement to an initial rating in excess of 20 percent for residuals of an enlarged prostate between from April 9, 2010.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

G. Slovick, Associate Counsel



INTRODUCTION

The appellant is a Veteran who served on active duty from July 1979 to August 1986 and from June 1989 to May 2003.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2005 rating decision by the Houston, Texas, Regional Office (RO) of the Department of Veterans Affairs (VA). The Veteran's claim was subsequently transferred to the Roanoke, Virginia RO.

In January 2010, the issue on appeal was remanded for additional development to include a VA examination. The Board notes that the mandates of the January 2010 remand instructions have been followed and the issue on appeal is now ready for adjudication. See Stegall v. West, 11 Vet. App. 268, 270-71 (1998). 


FINDINGS OF FACT

1. For the time period from June 1, 2003 to April 8, 2010, residuals of an enlarged prostate were manifested by voiding every one or two hours and awakening to void three to four times per night.

2. From April 9, 2010, residuals of enlarged prostate were manifested by voiding twice an hour and awakening five or more times per night.


CONCLUSIONS OF LAW

1. Between June 1, 2003 and April 8, 2010, the criteria for a rating in excess of 20 percent for residuals of an enlarged prostate have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 4.115a, 4.115b (2010).

2. From April 9. 2010, the criteria for a rating of 40 percent, but no higher, for residuals of an enlarged prostate have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 4.115a, 4.115b (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also 73 Fed. Reg. 23,353-23,356 (April 30, 2008) (concerning revisions to 38 C.F.R. § 3.159). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Notice should be sent prior to the appealed rating decision or, if sent after the rating decision, before a readjudication of the appeal. A Supplemental Statement of the Case, when issued following a notice letter, satisfies the due process and notification requirements for an adjudicative decision for these purposes. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

As service connection, an initial rating, and an effective date have been assigned, the notice requirements of 38 U.S.C.A. § 5103(a) have been met. 

VA has fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. He was provided the opportunity to present pertinent evidence and testimony. In sum, there is no evidence of any VA error in notifying or assisting him that reasonably affects the fairness of this adjudication. 38 C.F.R. § 3.159(c).


Laws and Regulations

The severity of a service-connected disability is ascertained, for VA rating purposes, by the application of rating criteria set forth in VA's Schedule for Rating Disabilities, 38 C.F.R. Part 4 (2010) (Schedule). To evaluate the severity of a particular disability, it is essential to consider its history. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. §§ 4.1 and 4.2.

Where there is a reasonable doubt as to the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. §§ 3.102, 4.3. In addition, where there is a question as to which of two disability evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Where an award of service connection for a disability has been granted and the assignment of an initial evaluation for that disability is disputed, separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be "staged." Fenderson v. West, 12 Vet. App. 119, 125-126 (1999). 

The Veteran's prostate disorder is rated under Diagnostic Code 7527, Prostate gland injuries, infections, hypertrophy, post-operative residuals.

This diagnostic code mandates that a disability should be rated as voiding dysfunction or urinary tract infection, whichever is predominant. 38 C.F.R. § 4.115b, Diagnostic Code 7527 (2010).

In accordance with the ratings for Voiding Dysfunction, a voiding dysfunction which requires the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day warrants a 60 percent rating. A voiding dysfunction which requires the wearing of absorbent materials which must be changed 2 to 4 times per day warrants a 40 percent rating. Voiding dysfunctions which require the wearing of absorbent materials which must be changed less than 2 times per day are rated as 20 percent disabling.

Regarding ratings based on urinary frequency, a daytime voiding interval between one and two hours, or; awakening to void three to four times per night warrants a 20 percent disability evaluation. A daytime voiding interval less than one hour, or; awakening to void five or more times per night warrants a disability evaluation of 40 percent. 

The Veteran's claims file evidences erectile dysfunction. In this case, as such erectile dysfunction is shown by the record to be unrelated to the Veteran's benign prostate hypertrophy, such symptoms cannot be considered in this analysis. See April 2010 VA Examination. 

Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in 38 C.F.R. § 3.321 an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Shinseki, 573 F.3d 1366 (Fed. Cir. 2009).

In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional 
disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Factual Background 

A treatment note from the Brooke Army Medical Center noted described the Veteran's reports of urinary frequency off and on for two years. 

In a January 2005 preventative examination note, the Veteran reported urination three times per night. A March 2005 Brooke Army Medical Center noted the Veteran's benign prostate hypertrophy with nocturia. An August 2005 treatment note reported that the Veteran had been medicated but had no change of urinary frequency. It was noted that the Veteran had bladder hyperactivity without urinary urgency, incomplete emptying of the bladder or straining.

The Veteran was examined in January 2005. During his examination the Veteran stated that he had nocturia of three times a night and passed urine every one or two hours in the daytime. He reported no incontinence, surgery on the urinary tract or urinary tract infections. The Veteran stated that he had no acute nephritis or hospitalization for urinary tract disease. Catherization was not required.

Regarding the effects on the Veteran's occupation and daily activities, the Veteran stated that the frequency of urination bothered him when he worked as a transportation officer as he had to go to the bathroom every hour or two. It bothered him somewhat at home since he had to go to the bathroom often and he explained that when he went out to dinner he had to know where the bathroom was.

An April 2010 treatment note from private facility Berryville Medical Associates noted that the Veteran had benign prostate hyperplasia associated with urinary frequency. He reported urinary frequency as often as twice an hour and four times a night and uncontrolled. 

The Veteran was afforded a VA examination in order to determine the severity of his prostate disorder in April 2010. It was noted that the Veteran experienced symptoms of increased urinary frequency during the day time and at night. It was also noted that the Veteran was on blood pressure medication. The examiner reported that there was no history of hospitalization, surgery, trauma to the genitourinary system or neoplasm. There were no general systemic symptoms due to genitourinary disease. The Veteran described symptoms to include urinary urgency, difficulty starting stream, weak or intermittent stream. He denied dysuria, dribbling, straining to urinate or hematuria.

The Veteran reported no urine retention or urethral discharge. He stated that he urinated every one to two hours and voided five times or more per night. There was no urinary leakage, recurrent urinary tract infections, obstructive voiding urinary tract stones, renal dysfunction or failure. There was erectile dysfunction related to medication. 

The examiner noted that the Veteran was employed and that there were not significant effects of the Veteran's prostate on his occupation. A diagnosis of mild benign prostatic hypertrophy was provided. It was noted by the examiner that the Veteran had been on various hypertension medications and that presently prostate findings were only equivocal borderline enlarged prostate. He further stated that it was less likely that the Veteran's erectile dysfunction was related to or caused by the Veteran's borderline or mild benign prostate hypertrophy. 

Analysis

In this case, the Board finds that a 20 percent disability evaluation is appropriate for the period between June 1, 2003 and April 8, 2010. During this period the evidence has not demonstrated daytime voiding interval less than one hour or awakening to void five or more times a day, a voiding dysfunction requiring the wearing of absorbent materials which must be changed two to four times a day, urinary retention requiring catherization, or recurrent symptomatic urinary tract infection. Thus, the evidence simply does not warrant a higher disability rating under the schedular criteria for this period. 

From April 9, 2010, however, the evidence demonstrates reports of urinary frequency which requires daytime voiding more than once and hour and urinary frequency which caused the Veteran to awaken five or more times a night. The Board notes that the Veteran reported different symptomology to his private physician in April 2010 than he did to his VA examiner in that same month and that the Veteran is only shown to have slight enlargement of the prostate. The Board however, giving the Veteran the benefit of the doubt and noting that the reported symptoms warrant a higher rating, finds that a 40 percent disability evaluation is appropriate for this period. 

The Board further finds the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Shinseki, F.3d 1366 (Fed. Cir. 2009). 

In adjudicating the appeal for an initial compensable rating the Board considered the holding in Rice v. Shinseki, 22 Vet. App. 447 (2009) (claims for higher evaluations include a claim of entitlement to a total rating based on individual unemployability when the appellant claims he is unable to work due to a service connected disability). However, the Board finds that Rice is not applicable to the current appeal because the Veteran has never claimed that his service connected prostate disorder prevents him from obtaining and/or maintaining employment. Therefore, the Board finds that the current decision need not consider whether the Veteran meets the criteria for a total disability evaluation based on individual unemployability due to service connected disorders.


ORDER

Between June 1, 2003 and April 8, 2010 entitlement to an initial rating in excess of 20 percent for residuals of an enlarged prostate is denied.

From April 9, 2010, a disability rating of 40 percent for residuals of an enlarged prostate is granted, subject to the governing law and regulations pertaining to the payment of monetary benefits.



____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs