Citation Nr: 1550140 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 11-23 865 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to service connection for prostate cancer, to include as due to herbicide exposure. 

2. Entitlement to service connection for chloracne, to include as due to herbicide exposure. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

K. Anderson, Associate Counsel


INTRODUCTION

The Veteran had active military service from March 1967 to December 1968. 

This matter comes to the Board of Veterans' Appeals (Board) from a March 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Togus, Maine, and a March 2011 rating decision from the RO in Pittsburg, Pennsylvania. Subsequent jurisdiction of the matter has been completely transferred to the RO in Pittsburg. 

This claim was previously before the Board in December 2013 and the Board denied entitlement to service connection. The Veteran appealed the decision to the United States Court of Veterans Claims (Court). In a January 2015 order, the Court vacated the Board's December 2013 decision and remanded the claim for additional development. 

This claim was returned to the Board in July 2015, at which time the claim was remanded to allow the Agency of Original Jurisdiction (AOJ) to further assist the Veteran in the development of his claim, to include issuing a supplemental statement of the case. The requested development has been completed by the RO and with no further action necessary to comply with the Board's remand directives; the case is once again before the Board for appellate consideration of the issue on appeal. Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran testified at a hearing before the Board in March 2012. A VLJ who conducts a hearing must fully explain the issues and suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Here, during the hearing, the Veteran was assisted by a representative, and both the representative and the VLJ asked relevant questions concerning the Veteran's symptoms and the resulting impairment, as well as the effect of his disability on his daily life and his occupation. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2). In May 2015, the Veteran was notified that the VLJ who conducted his hearing was no longer employed by the Board and he was offered the opportunity to testify at another hearing. In May 2015, the Veteran responded that he did not wish to appear at another hearing. Accordingly, the Board will proceed with adjudication of the claim.

The issue of chloracne is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran served in Korea, along the DMZ, during September 1967 to November 1968 and was exposed to herbicides. 

2. The Veteran has been diagnosed with prostate cancer. 


CONCLUSION OF LAW

Prostate cancer is presumed to have been incurred in active service. 38 U.S.C.A. §§ 1110, 5108 (West 2014); 38 C.F.R. §§, 3.303, 3.307, 3.309 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Under 38 U.S.C.A. § 7104, Board decisions must be based on the entire record, with consideration of all the evidence. In Timberlake v. Gober, 14 Vet. App. 122 (2000), the Court held, in pertinent part, that the law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. The Federal Circuit has also held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).
 
VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.
 
Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).
 
In order to establish service connection for the claimed disorder, there must be competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006).

For purposes of establishing service connection for a disability resulting from exposure to a herbicide agent, a Veteran who, during active military, naval, or air service, served in the Republic of Vietnam between January 1962 and May 1975, shall be presumed to have been exposed during such service to a herbicide agent, absent affirmative evidence to the contrary demonstrating that the Veteran was not exposed to any such agent during service. 38 U.S.C.A. § 1116(f). Moreover, the diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, "except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda..." shall have become manifest to a degree of 10 percent or more within a year after the last date on which the Veteran was exposed to an herbicide agent during active military, naval, or air service. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6)(ii). These diseases include, in pertinent part, chloracne or other acneform disease consistent with chloracne, and prostate cancer. See 38 C.F.R. § 3.309(e). 

The Secretary of Veterans Affairs has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-46 (1994); see also Notice, 61 Fed. Reg. 41, 442-49(1996); see Notice, 68 Fed. Reg. 27,630-41 (May 20, 2003). 

However, if exposure to Agent Orange or other herbicide agent(s) during active service at any location were to be established by the evidence, then the presumptions as to service connection of the listed diseases could be invoked. See 38 C.F.R. § 3.307(a)(6)(ii); see also Haas v. Peake, 129 S. Ct. 1002 (2009). (Providing that, even where a Veteran did not serve upon the landmass of Vietnam, he is always "free to pursue his claim that he was actually exposed to herbicides while" in service.) 

The United States Department of Defense (DOD) has confirmed that Agent Orange was used from April 1968 through July 1969 in Korea along the DMZ [demilitarized zone]. Both the 2nd and 7th Infantry Divisions, United States Army, had elements in the affected area at the time Agent Orange was being used. The Veterans Benefits Administration (VBA) provided guidance in May 2003 concerning claims for diseases based on exposure to herbicide agents used in Korea during the Vietnam era. VBA advised that information obtained through DOD disclosed that herbicide agents were used in Korea along the DMZ and in particular for the period from April 1968 through July 1969. Based on these facts, VBA advised that claims for Veterans who served in Korea during this period should be developed for such exposure, and that if a Veteran was so exposed, the presumptions found in 38 C.F.R. § 3.309(e) would apply.

It is VA's defined and consistently applied policy to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt it is meant that an approximate balance of positive and negative evidence exists which does not satisfactorily prove or disprove the claim. Reasonable doubt is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2015).

The Veteran is seeking service connection for chloracne and prostate cancer, to include as due to herbicide exposure. His DD-214 shows his military occupational specialty as a cook. He stated that he arrived at Camp "Red Cloud" in Korea and was assigned to the mess hall, where he managed supplies and kept it clean. After about 6 months he received a driver's license and began going on field maneuvers with Headquarters Company (HQ Co) I Corps to what he thinks was the north 2nd Infantry area where he believes there may have been a chemical odor in the air. He stated that all the roads were barren and rats were the only wildlife. He went to various colonies to deliver unused rations. He noted, "I ate my share of road dust[,]" and felt he may have been exposed to Agent Orange and other herbicides. He stated that shortly after he completed his tour, he developed skin problems (which were removed from his face, chin and back). He stated that his skin problems are due to exposure to Agent Orange. In March 2003, the Veteran was diagnosed with prostate cancer. 

The Veteran has submitted statements in support of his claim regarding being on the DMZ during September 1967 to November 1968. He stated that he was assigned to Camp Red Cloud during that time and that Camp Red Cloud was located approximately 20 miles from the DMZ and that his job as a truck driver took him on roads throughout the region of the DMZ. He was part of HQ Co, I Corps and was stationed at Camp Red Cloud. He noted a past history of prostate cancer, but no skin disorder. After discharge from the Army he worked as an iron worker for a bridge company, and as a truck driver.

The Veteran claims his unit participated in field maneuvers in the summer of 1968 to Camp Red Cloud near the DMZ with the 2nd Infantry Division. The RO requested verification of this through the Defense Personnel Records Information Retrieval System (DPRIS), in cooperation with the National Archives and Records Administration (NARA). They were unable to locate 1968 unit records submitted by HQ Co I Corps. Furthermore, the U.S. Army Center for Military History was able to verify that the HQ Co, I Corps was stationed at Camp Red Cloud, Uijongbu, Korea, located approximately 19 miles from the DMZ. However they were unable to verify or document that the unit conducted field maneuvers with the 2nd Infantry Division (2nd Inf. Div.) near the DMZ. On review of the 1967 - 1968 unit histories submitted by the 2nd Inf. Div., the histories do not document any specific duties performed by the unit members along the DMZ. In addition, the histories do not mention or document the HQ Co, I Corps conducting field maneuvers with the 2nd Inf. Div. 

A July 2011 response from the National Personnel Records Center (NPRC) reveals there was no record of exposure to herbicides. In August 2011 the Joint Services Records Research Center (JSRRC) issued a memorandum of formal findings of a lack of information required to corroborate exposure to herbicide agent associated with the Veteran's claims for service connection for disabilities claimed as due to exposure [in Korea].

At his March 2012 video conference hearing, the Veteran testified that in the summer of 1968 he went on a field maneuver that he thinks was near the DMZ. There was a chemical smell in the air and the wind was blowing. A sergeant asked what the odor was and was told "they're spraying for weeds, weed killer." He stated his unit assignment while on the DMZ was "The commanding general's mess hall." The unit was CG mess hall, 1st Cavalry Division (Headquarters). In a March 2012 written statement the Veteran noted that he visited other camps while he was stationed at Camp Red Cloud. He noted that he visited "Camp Howze, Camp Casey, and Camp Stanley."

The Veteran submitted statement from PFC R.H. to support his contentions that he served on the DMZ during a period which Agent Orange was used. PFC R.H. states that he served with the US Army on the DMZ with HHC 1st Bn. 23rd, Inf. 2nd Infantry Division from October 31, 1966 to November 22, 1967. During this time his Company provided security detail for South Korean troops that were spraying defoliants along major roads. He states that he later learned through declassified DoD documentation that the chemicals used were: Agent Orange, Agent Blue and Monuron. 

The Veteran also submitted a statement from L.S. to support the Veteran's contention that Army maneuvers were completed in I Corps Area of UN Command Korea, 1967-1968. L.S. states that he completed several weeks of training on the DMZ and that he was regularly exposed to an array of chemicals. L.S. did not serve with the Veteran nor was L.S. with the Veterans Company; however, he speaks to the fact that chemicals were used in the area where the Veteran was assigned. 

The Veteran also submitted a statement in support of claim that was provided for another Veteran that served in the same area. This particular Veteran states that he was assigned to Hq. Co. 1/23rd, Infantry Second Division in Korea along the DMZ. R.H.'s statement also supports the Veteran's contentions that soldiers in this unit were stationed along the DMZ and were exposed to herbicides and have been service connected for their disabilities due to exposure to herbicides. 

The Veteran's personnel records show he served in Korea with the HQ Co, I Corps, (which is not one of the units identified by DOD that served in areas where herbicides were used) and DOD could not verify that field maneuvers were conducted with the 2nd Infantry Division near the DMZ as claimed by the Veteran. However, the Board has determined that the evidence is in equipoise as the Veteran has provided sufficient evidence in the form of his own statements and those of other Veteran's that the 2nd Infantry Division near the DMZ were exposed to herbicides in service and finds these statements to highly probative. The Board finds these statements from other Veteran's to be highly probative, as they relate to the overall circumstances of being assigned to this region during a period of war. As such, resolving all doubt in the Veteran's favor, the Board finds that the presumptive regulations regarding exposure to Agent Orange are applicable in this case. See 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e). Therefore, service connection for prostate cancer as due to exposure to herbicides is warranted.

Duties to Notify and Assist 

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004). The Board is granting the claim for service connection for prostate cancer. This decision constitutes a full grant of the benefits sought on appeal; therefore, no further discussion regarding VCAA notice or assistance duties is required.


ORDER

Service connection for prostate cancer is granted. 


REMAND

The Veteran has asserted entitlement to service connection for a skin disability, or more specifically chloracne. The medical record shows that in 1970 the Veteran underwent incision and drainage of a sebaceous cyst on the neck; and had subsequent treatment for cysts. At his video conference hearing the Veteran testified that he was told [by a medical professional] that his skin condition was possibly chloracne and that he had it for years. He further testified that the condition started in the head and neck area then moved around and continued until the present time. In April 2010, private medical records diagnosed the Veteran with grade I acne vulgaris. 

In light of the testimony as to continuity and the different diagnoses of record, the Board is remanding to determine if the diagnosed conditions of cyst in 1970 and the Veteran's more recent diagnosis of acne vulgaris are related to the Veteran's active military service. See 38 C.F.R. § 3.159(c)(4) (2015); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006); See Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC is requested to schedule the Veteran for a dermatology examination. The claims file, both paper and electronic versions, must be made available to and reviewed by the examiner. A complete clinical evaluation with any indicated testing must be performed.

The examiner is asked to identify all current dermatological disorder(s), and is asked to express a medical opinion on whether it is at least as likely as not (50 percent probability or greater) that any current dermatological disability is related to the Veteran's active military service. 

The examiner is specifically asked to comment on the following: 

(a) The Veteran's diagnosis of cyst in 1970 and whether those cysts were related to service to include exposure to herbicides in service. 

(b) The Veteran's diagnosis of grade I acne vulgaris 

(c) and the Veteran's contention that he was told [by a medical professional] that his skin condition was possibly chloracne and that he had it for years. 

A complete rationale must accompany the medical opinion. The absence of contemporaneous medical treatment, standing alone, cannot be the basis for rejecting the lay reports. The medical reasons for accepting or rejecting the Veteran's statements should be set forth in detail. If the reviewer cannot state an opinion without resort to speculation, he or she should so state and identify any outstanding information that would facilitate a non-speculative opinion. The agency of original jurisdiction (AOJ) should undertake any additional development suggested by the reviewer.

2. After completing all development required above and any additional development deemed necessary, re-adjudicate the service connection claims. If the benefit sought remains denied, the Veteran and his representative should be provided a supplemental statement of the case and given an opportunity to respond before the case is returned to the Board.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
H. SEESEL 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs