Citation Nr: 1714079 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 09-27 874A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for numbness and tingling of the right upper extremity.

2. Entitlement to a rating in excess of 20 percent for numbness and tingling of the left upper extremity. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

R. Gandhi, Associate Counsel



INTRODUCTION

The Veteran served honorably of active duty in the United States Air Force from June 1988 to August 2008.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah.

This case was previously before the Board in December 2014, when the Board granted a 30 percent disability rating for the Veteran's numbness and tingling of the right upper extremity, and a 20 percent disability rating for numbness and tingling of the left upper extremity. The Veteran timely appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In February 2016, pursuant to a Joint Motion for Remand (Joint Motion), the Court vacated the Board's December 2014 decision to the extent it denied entitlement to disability ratings greater than those listed above.

When this case was most recently before the Board in March 2016, it was remanded for additional development and adjudicative action. The case has now been returned to the Board for further appellate action.

The record before the Board consists of the electronic records within Virtual VA and the Veterans Benefits Management System (VBMS).

As set forth in more detail below, the issues of entitlement to extraschedular evaluations for bilateral hearing loss and entitlement to a total disability rating due to individual unemployability (TDIU) due to service-connected disabilities are remanded for additional consideration.





FINDINGS OF FACT

1. The Veteran's right upper extremity disability has been manifested by moderate, but not severe, incomplete paralysis of the lower radicular group.

2. The Veteran's left upper extremity disability has been manifested by severe, incomplete paralysis of the lower radicular group.

CONCLUSION OF LAW

1. The criteria for the assignment of a disability rating in excess of 30 percent for a right upper extremity disability have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code (DCs) 8512 (2016).

2. The criteria for the assignment of a disability rating in excess of 20 percent for a left upper extremity disability have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8512 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5103 , 5103A (West 2014) and 38 C.F.R. § 3.159 (2016). Here, VA provided adequate notice in a letter sent to the Veteran in June 2016.

VA has a duty to assist the claimant in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A ; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service and VA treatment records, as well as private treatment records. Also, VA afforded the Veteran relevant examinations in July 2008, November 2009, and September 2016. The resulting reports describe the Veteran's right and left upper extremity disability, take into consideration the relevant history, and provide an adequate rationale for the conclusions reached. Additional explanation is appropriately found in the merits section of the instant document. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007).
The Board further finds that there has been substantial compliance with the directives from the Board's March 2016 remand. Stegall v. West, 11 Vet. App. 268 (1998). Pursuant to the remand, the RO arranged for the Veteran to undergo a VA examination for his right and left upper extremities in September 2016. Additionally, recent VA treatment records have been associated with the Veteran's electronic record. Accordingly, the requirements of the remands were ultimately accomplished and their instructions were substantially complied with. Id.

II. Entitlement to a Rating in Excess of 30 Percent for Numbness and Tingling of the Right Upper Extremity and Entitlement to a Rating in Excess of 20 percent for Numbness and Tingling of the Left Upper Extremity.

A. Legal Criteria

The Veteran contends that he is entitled to a rating in excess of 30 percent for his right upper extremity and in excess of 20 percent for his left upper extremity due to his decreased grip strength, pain, and numbness in his upper extremities. 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

The Board will consider any potentially applicable Diagnostic Code in its analysis. Disease of the peripheral nerves of the upper extremities are rated under 38 C.F.R. § 4.124a , Diagnostic Codes 8510 to 8719 . The Veteran's right side is his dominant side, and thus is considered the "major" extremity. The Veteran's left side is his "minor" side.

There are several potentially applicable Diagnostic Codes for the Veteran's condition. Diagnostic Code 8512 applies to the upper radicular group, Diagnostic Code 8511 to the middle radicular group, and Diagnostic Code 8512 to the lower radicular group. Diagnostic Code 8513 applies to complete or incomplete paralysis of all radicular groups. 38 C.F.R. § 4.124a.

Diagnostic Codes 8514-8519 apply to complete or incomplete paralysis of the specific nerves: musculospiral (radial) nerve (Diagnostic Code 8514), median nerve (Diagnostic Code 8515), ulnar nerve (Diagnostic Code 8516), musculocutaneous nerve (Diagnostic Code 8517), circumflex nerve (Diagnostic Code 8518), and long thoracic nerve (Diagnostic Code 8519). 

Given the evidence of record, of particular note are Diagnostic Codes 8512, 8514, 8515, and 8516. 

Diagnostic Code 8512 provides that mild incomplete paralysis of the lower radicular group is rated as 20 percent disabling on the major side and 20 percent on the minor side; moderate incomplete paralysis is rated 40 percent disabling on the major side and 30 percent on the minor side; and severe incomplete paralysis is rated 50 percent disabling on the major side and 40 percent on the minor side. Complete paralysis is rated 70 percent disabling on the major side and 60 percent on the minor side. 38 C.F.R. § 4.124a, Diagnostic Code 8512. 

Under Diagnostic Code 8514 incomplete paralysis of the radial nerve that is mild is rated at 20 percent for both the major and minor extremity. Moderate incomplete paralysis warrants a 30 percent rating for the major extremity and a 20 percent rating for the minor extremity. Severe incomplete paralysis is rated at 50 percent for the major extremity and 40 percent for the minor extremity
Diagnostic Code 8515 provides for a 10 percent rating for mild incomplete paralysis of the medial nerve in the major extremity as well as in the minor extremity; a 20 percent rating for moderate incomplete paralysis in the minor extremity and 30 percent in the major extremity; and a 40 percent rating for severe incomplete paralysis in the minor extremity and 50 percent in the major extremity. Id. Complete paralysis of the medial nerve warrants a 70 percent rating for the major extremity and a 60 percent rating in the minor extremity.

Diagnostic Code 8516 provides that for both the major and minor side, mild incomplete paralysis of the ulnar nerve warrants a 10 percent evaluation; moderate incomplete paralysis of the ulnar nerve warrants a 30 percent for the major side and 20 percent for the minor side; and severe incomplete paralysis of the ulnar nerve warrants a 40 percent for the major side and a 30 percent for the minor side. Complete paralysis of the ulnar nerve, with the "Griffith claw" deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the thumb; flexion of the wrist weakened; warrant the maximum 60 percent for the major side and 50 percent for the minor side.

The term "incomplete paralysis" with this or other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild or at most, the moderate degree. See 38 C.F.R. § 4.124a.

Words such as "mild," "moderate" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. 4.6 (2016). 

Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14. 
The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).

B. Factual Background

The Veteran was provided with a VA examination by "Dr. L" in July 2008. At that examination it was noted that the Veteran was right hand dominant. During the examination the Veteran complained of numbness and tingling in the bilateral hands. In particular, it was noted as occurring in the middle three fingers of each hand. The symptoms were said to be chronic and present daily, with occasional, oppressing pain. No functional impairment was noted with the condition. The Veteran was able to tie shoelaces, fasten buttons, and pick up a piece of paper and tear it without difficulty. The Veteran had normal hand strength and range of motion bilaterally. Tinel Sign and Phalen Sign testing both were positive. There was no decrease in range of motion or presence of pain upon repetition. See July 2008 C&P Exam.

After an EMG in October 2008, the examining physician, "Dr. A", stated that there was electrodiagnostic evidence of left sensory medial mono-neuropathy (carpal tunnel syndrome), left ulnar neuropathy, and right ulnar neuropathy. See October 2008 STR-Medical. 

The Veteran was provided with another VA examination in November 2009. At this examination, the Veteran indicated that he could no longer renew his pilot's license due to his being unable to pass flight testing as a result of his disability. The Veteran stated that he was working at a desk job - which required the use of his hands. The Veteran also reported symptoms of weakness in his hands, for which he had treated with physical therapy. Although there was no weakness shown at the time of the examination, it was noted that the Veteran experienced flare-ups about 3 times per year and lasting about 2 to 3 weeks. There were no functional limitations noted in regards to activities of daily living. Tinel Sign testing was negative and Phalen Sign testing was positive.

A February 2013 private EMG showed evidence of bilateral carpal tunnel syndrome and left ulnar nerve entrapment with features of demyelination. See February 2013 Medical Treatment Record - Government Facility. 

A February 2016 Joint Motion found that because the Board limited its analysis to a rating under DC 8515, where there was evidence of both median and ulnar nerve involvement, it had provided an inadequate statement of reasons or bases. A remand was ordered to secure an adequate statement of reasons or bases. See February 2016 Court Decision. A remand was issued by the Board to determine the severity of the Veteran's disability affecting the bilateral upper extremities and also to clarify the distinct symptomatology that the Veteran experienced as the result of median nerve impairment, ulnar never impairment, and flexor impairment. See March 2016 Board Remand.

In September 2016, the Veteran underwent another VA examination. During the examination the Veteran complained of pain in both arms - with the pain being worse in his left arm, both his arms falling asleep, "dead" fingertips, and decreased grip strength. The examiner found that the Veteran had moderate intermittent pain (usually dull) in the right upper extremity and severe intermittent pain (usually dull) in the left upper extremity; moderate paresthesias and/or dysesthesias in the right upper extremity and severe paresthesias and/or dysesthesias in the left upper extremity; and moderate numbness in the right upper extremity and severe numbness in the left upper extremity. The Veteran's right wrist flexion, wrist extension, grip, and pinch all were rated at 4 out of 5 (active movement against some resistance). The Veteran's left wrist flexion, wrist extension, grip, and pinch all were rated at 2 out of 5 (active movement with gravity eliminated). The Veteran's elbow flexion and elbow extension were both rated at normal strength, bilaterally. Muscle atrophy was present on the Veteran's left forearm. 

The Veteran's right radial nerve was found to be normal and the Veteran's left radial nerve was found to have severe incomplete paralysis. The Veteran's right median nerve was found to have mild incomplete paralysis and the Veteran's left median nerve was found to have severe incomplete paralysis. The Veteran's right ulnar nerve was found to have mild incomplete paralysis and the Veteran's left ulnar nerve was found to have mild incomplete paralysis. The Veteran's musculocutaneous nerve was found to be normal bilaterally. The Veteran's circumflex nerve was found to be normal bilaterally. The Veteran's long thoracic nerve was found to be normal bilaterally. The Veteran's upper radicular group was found to be normal bilaterally. The Veteran's middle radicular group was found to be normal bilaterally. The Veteran's right lower radicular group was found to have moderate incomplete paralysis and the Veteran's left lower radicular group was found to have severe incomplete paralysis. Phalen's sign and Tinel's sign were positive bilaterally. It was noted by the examiner that the Veteran works in real estate and that any occupation that requires bilateral grip strength such as holding tools or a keyboarding occupation would be comprised. See September 2016 VA Examination. 

C. Analysis

Right Upper Extremity

Based on the evidence of record, a rating in excess of 30 percent for numbness and tingling of the right upper extremity is warranted. The Veteran's right upper extremity is his dominant, or major, extremity. The Veteran's most recent VA examination in September 2016 showed the Veteran's right median nerve to have mild incomplete paralysis, which equates to a 10 percent rating (DC 8515); right ulnar nerve to have mild incomplete paralysis; which equates to a 10 percent rating (DC 8516); and right lower radicular group to have moderate incomplete paralysis, which equates to a 40 percent rating (DC 8512). The highest available rating available is for a 40 percent rating for moderate incomplete paralysis of the lower radicular group affecting the major extremity. 38 C.F.R. § 4.124a, DC 8515, 8516, 8512. 

Separate ratings are not in order as they precluded by the note in 38 C.F.R. § 4.124a that bars separate ratings for upper extremity peripheral nerve disabilities that involve multiple nerves. Additionally, that even in the absence of the note in 38 C.F.R. § 4.124a , separate ratings cannot be assigned as the symptomatology associated with the Veteran's disability was not shown by the evidentiary record to be separate and distinct. The symptomatology, such as the pain and decreased grip strength, is overlapping and duplicative. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14.

Therefore a 40 percent rating under Diagnostic Code 8512 for moderate incomplete paralysis of the major lower radicular group should be assigned as the Veteran's disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7.

Left Upper Extremity

Based on the evidence of record a rating in excess of 30 percent for numbness and tingling of the left upper extremity is warranted. The Veteran's left upper extremity is his non-dominant, or major, extremity. The Veteran's most recent VA Examination, in September 2016, showed the Veteran's left radial nerve to have severe incomplete paralysis, which equates to a 40 percent rating (Diagnostic Code 8514); left median nerve to have severe incomplete paralysis, which equates to a 40 percent rating (Diagnostic Code 8515); left ulnar nerve to have mild incomplete paralysis; which equates to a 10 percent rating (Diagnostic Code 8516); and left lower radicular group to have severe incomplete paralysis, which equates to a 40 percent rating (Diagnostic Code 8512). The highest available rating available is for a 40 percent rating for severe incomplete paralysis of the lower radicular group affecting the minor extremity. 38 C.F.R. § 4.124a, Diagnostic Code 8514, 8515, 8516, 8512.

Separate ratings are not in order as they precluded by the note in 38 C.F.R. § 4.124a that bars separate ratings for upper extremity peripheral nerve disabilities that involve multiple nerves. Additionally, that even in the absence of the note in 38 C.F.R. § 4.124a, separate ratings cannot be assigned as the symptomatology associated with the Veteran's disability was not shown by the evidentiary record to be separate and distinct. The symptomatology, such as the pain and decreased grip strength, is overlapping and duplicative. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14.

Therefore a 40 percent rating under Diagnostic Code 8512 for severe incomplete paralysis of the minor lower radicular group should be assigned as the Veteran's disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7.


ORDER

1. Entitlement to a rating of 40 percent for numbness and tingling of the right upper extremity is granted.

2. Entitlement to a rating of 40 percent for numbness and tingling of the left upper extremity is granted.


REMAND

Pursuant to 38 C.F.R. § 3.321, in exceptional cases where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability. The governing norm in these exceptional cases is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent period of hospitalizations as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2016); see also Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

Similarly, all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Rating boards are to submit to the "Director, Compensation Service," for extraschedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities, but, as here, who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a) (2016). 38 C.F.R. § 4.16(b) (2016). 

The Board notes that the evidence suggests that an extraschedular disability rating may be warranted. The September 2016 VA examiner noted that the Veteran had lost 30 days of work in the last 12 months due to his peripheral nerve condition. The examiner also noted that the Veteran's nerve condition impacts his ability to work, including in any occupation that requires bilateral grip strength such as holding hand tools, and the examiner further determined that occupations involving keyboards would also be compromised. This raises the issue of entitlement to an extraschedular disability rating and the possibility of entitlement to a total disability rating based on individual unemployability. 38 C.F.R. §§ 3.321, 4.16(b) (2016). Although the examiner referenced that the Veteran works in real estate, it is unclear the extent to which the Veteran's nerve condition impacts his ability to have a "substantially gainful occupation" - rather than marginal employment - in real estate. 
 
Thus, in light of the September 2016 VA examiner's statement, this case warrants further development and referral pursuant to 38 C.F.R. §§ 3.321(b)(1) and 4.16(b).

Accordingly, the case is REMANDED for the following action:

1. The AOJ should undertake appropriate development to clarify the Veteran's occupational history, as well as the details of any current employment. The AOJ should undertake any other development deemed warranted regarding the effect of the Veteran's service-connected peripheral nerve condition, as well as the combined effects of his service-connected disabilities, on employment. 

2. After conducting any indicated development, refer the Veteran's claim to VA's Director of Compensation Services or the Undersecretary for Benefits for adjudication of entitlement to an extraschedular rating for bilateral hearing loss under the provisions of 38 C.F.R. § 3.321(b)(1) and entitlement to a TDIU pursuant to 38 C.F.R. § 4.16(b).

3. If the benefits sought on appeal are not granted in full, issue a supplemental statement of the case; and return the appeal to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
A. S. CARACCIOLO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs