Citation Nr: 1823354 
Decision Date: 04/20/18 Archive Date: 04/26/18

DOCKET NO. 10-08 221 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to a disability rating in excess of 30 percent for glaucoma, to include glaucoma with pigment epithelial detachment, from February 5, 2009, to July 9, 2017, and in excess of 40 percent since July 10, 2017. 

2. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation. 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

A. Hodzic, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 1978 to May 1982. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

The Veteran initially requested a Board hearing via videoconference in his February 2010 Substantive Appeal (VA Form 9). In a January 2018 letter, the Veteran was notified of the time and place of his scheduled March 2018 Board hearing. In a February 2018 written statement, the Veteran withdrew his hearing request prior to the scheduled hearing. Therefore, the request for a hearing is considered withdrawn. See 38 C.F.R. § 20.702(e) (2017).


FINDINGS OF FACT

1. From February 5, 2009, to December 29, 2011, the Veteran's bilateral eye open-angle glaucoma manifested as visual acuity of no worse than 20/20 and field of vision limited to no worse than 18 degrees in the right eye, and visual acuity of no worse than 20/20 and field of vision limited to no worse than 34 degrees in the left eye.

2. After affording the Veteran the benefit of the doubt, since December 30, 2011, his bilateral eye open-angle glaucoma manifested as visual acuity of no worse than 20/70 and field of vision limited to no worse than 11 degrees in the right eye, and visual acuity of no worse than 20/60 and field of vision limited to no worse than 56 degrees in the left eye.

3. In a May 2007 rating decision, the RO denied an application to reopen a claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation. The Veteran appealed this decision in a September 2007 notice of disagreement (NOD). Although a statement of the case (SOC) was issued in October 2007 continuing the denial, the Veteran failed to perfect an appeal to the Board and he did not submit new and material evidence within one year of the May 2007 rating decision; thus, the May 2007 rating decision became final. 

4. Evidence associated with the claims file since the May 2007 rating decision, when considered by itself or in connection with evidence previously assembled, does not relate to an unestablished fact necessary to substantiate the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, and does not raise a reasonable possibility of substantiating the claim.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 30 percent for glaucoma, to include glaucoma with pigment epithelial detachment, from February 5, 2009, to December 29, 2011, and in excess of 40 percent since July 10, 2017, have not been met; however, the criteria have been met for a disability rating of 40 percent, but not higher, from December 30, 2011, to July 9, 2017. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.79, Diagnostic Codes (DCs) 6013-6066, 6080 (2017).

2. The May 2007 rating decision denying the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, is final. 38 U.S.C. § 7105(c) (2012); 38 C.F.R. §§ 3.104(a), 20.302(a), 20.1103 (2017).

3. As evidence received since the May 2007 rating decision is not new and material, the criteria for reopening the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, have not been met. 38 U.S.C. §§ 5108, 7105 (2012); 38 C.F.R. § 3.156 (2017).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran has not raised any issues with the duty to notify or assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

Increased Rating for Glaucoma

The Veteran contends that his bilateral eye disability should be rated higher than the currently-assigned disability ratings. 

VA has adopted a Schedule for Rating Disabilities (Schedule) to evaluate service-connected disabilities. See 38 U.S.C. § 1155; 38 C.F.R., Part IV. Disability evaluations assess the ability of the body as a whole, the psyche, or a body system or organ to function under the ordinary conditions of daily life, to include employment. 38 C.F.R. § 4.10 (2017). The percentage ratings in the Schedule represent the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The percentage ratings are generally adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the disability. Id.

The Schedule assigns DCs to individual disabilities. DCs provide rating criteria specific to a particular disability. If two DCs are applicable to the same disability, the DC that allows for the higher disability rating applies. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the claimant. 38 C.F.R. § 4.3. The Schedule recognizes that a single disability may result from more than one distinct injury or disease; however, rating the same disability or its manifestation(s) under different DCs - a practice known as pyramiding - is prohibited. See 38 C.F.R. § 4.14 (2017).

In disability rating cases, VA assesses the level of disability from the initial grant of service connection or a year prior to the date of application for an increased rating and determines whether the level of disability warrants the assignment of different disability ratings at different times over the course of the claim, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119, 126 (1999); see also Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007) (holding that staged ratings may be warranted in increased rating claims). The Veteran filed an application for an increased rating that was received by VA on February 5, 2009. 

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3 (0217). 

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C. § 7104(a) (2012). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The Veteran's eye disability is currently rated as 30 percent disabling from February 5, 2009, to July 9, 2017, and as 40 percent disabling since July 10, 2017, pursuant to 38 C.F.R. § 4.79, DC 6013-6066 based on impairment of visual field and visual acuity. 

38 C.F.R. § 4.79, DC 6013, which rates open-angle glaucoma, indicates that a minimum evaluation of 10 percent is warranted if continuous medication is required to treat glaucoma. This DC further instructs that this disability should be rated under visual impairment. Id. The Schedule evaluates visual impairment based on impairment of visual acuity (excluding developmental errors of refraction), visual field, and muscle function. See 38 C.F.R. § 4.75(a) (2017). 

Impairment of central visual acuity is evaluated on the basis of corrected distance vision with central fixation, even if a central scotoma is present. 38 C.F.R. § 4.76 (2017). Visual acuity is evaluated from noncompensable to 100 percent based upon the degree of the resulting impairment of visual acuity or field loss, pain, rest-requirements, or episodic incapacity, combining an additional rating of 10 percent during continuance of active pathology. 38 C.F.R. § 4.79, DCs 6061 to 6066 (2017). 

In this regard, a 10 percent evaluation is warranted only when there is (1) 20/50 vision in one eye with 20/40 or 20/50 vision in the other eye; (2) 20/70 vision in one eye with 20/40 vision in the other eye; or, (3) 20/100 vision in one eye with 20/40 vision in the other eye. 38 C.F.R. § 4.79, DC 6066. 

A 20 percent evaluation is warranted only when there is (1) 20/70 vision in one eye with 20/50 vision in the other eye; (2) 20/100 vision in one eye with 20/50 vision in the other eye; (3) 20/200 vision in one eye with 20/40 vision in the other eye; or, (4) 15/200 vision in one eye with 20/40 vision in the other eye. Id. 

A 30 percent evaluation is warranted only (1) when vision in both eyes is correctable to 20/70; (2) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/70; (3) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/50; (4) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/50; (5) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/40; (6) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/40; or, (7) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.79, DCs 6064, 6065, 6066.

A 40 percent disability rating is warranted only (1) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/70; (2) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/50; (3) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/50; (4) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/50; or, (5) when there is anatomical loss of one eye and vision in the other eye is correctable to 20/40. 38 C.F.R. § 4.79, DCs 6063, 6064, 6065, 6066.

A 50 percent disability rating is warranted only (1) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/100; (2) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/70; (3) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/70; (4) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/70; or (5) when there is anatomical loss of one eye and vision in the other eye is correctable to 20/50. Id. 

A 60 percent disability rating is warranted only (1) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/100; (2) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/100; (3) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/200; (4) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/100; (5) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/100; or (6) when there is anatomical loss of one eye and vision in the other eye is correctable to 20/70 or 20/100. Id. 

A 70 percent disability rating is warranted only (1) when vision in one eye is correctable to 20/200 and vision in the other eye is correctable to 20/200; (2) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 20/200; (3) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 20/200; (4) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 20/200; (5) when vision in one eye is no more than light perception and vision in the other eye is correctable to 20/200; or (6) when there is anatomical loss of one eye and vision in the other eye is correctable to 20/200. Id.

An 80 percent disability rating is warranted only (1) when vision in one eye is correctable to 15/200 and vision in the other eye is correctable to 15/200; (2) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 15/200; (3) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 15/200; (4) when vision in one eye is no more than light perception and vision in the other eye is correctable to 15/200; or (5) when there is anatomical loss of one eye and vision in the other eye is correctable to 15/200. Id.

A 90 percent disability rating is warranted only (1) when vision in one eye is correctable to 10/200 and vision in the other eye is correctable to 10/200; (2) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 10/200; (3) when vision in one eye is no more than light perception and vision in the other eye is correctable to 10/200; or (4) when there is anatomical loss of one eye and vision in the other eye is correctable to 10/200. Id.

A 100 percent disability rating is warranted only (1) when vision in one eye is correctable to 5/200 and vision in the other eye is correctable to 5/200; (2) when vision in one eye is no more than light perception and vision in the other eye is correctable to 5/200; (3) when there is anatomical loss of one eye and vision in the other eye is correctable to 5/200; (4) when there is no more than light perception in both eyes; or (5) when there is anatomical loss of both eyes. 38 C.F.R. § 4.79, DCs 6061, 6062, 6063, 6064, 6065, 6066.

Under 38 C.F.R. § 4.76a, Table III (2017), the normal visual field extent at the 8 principal meridians totals 500 degrees. The normal for the 8 principal meridians are as follows: 85 degrees temporally; 85 degrees down temporally; 65 degrees down; 50 degrees down nasally; 60 degrees nasally; 55 degrees up nasally; 45 degrees up; and, 55 degrees up temporally. Id. The extent of visual field contraction in each eye is determined by recording the extent of the remaining visual fields in each of the eight 45 degree principal meridians. Id. 

Under new DC 6080, a 10 percent rating is assigned for a unilateral scotoma; with remaining field of 46 to 60 degrees bilaterally or unilaterally; with remaining field of 31 to 45 degrees unilaterally; with remaining field of 16 to 30 degrees unilaterally; loss of superior half of visual field bilaterally or unilaterally; loss of interior half of visual field unilaterally; loss of nasal half of visual field bilaterally or unilaterally; and loss of temporal half of visual field unilaterally. A 20 percent rating is assigned for remaining field of 6 to 15 degrees unilaterally. A 30 percent rating is assigned for remaining field of 31 to 45 degrees unilaterally; concentric contraction of visual field unilaterally; loss of temporal half of visual field bilaterally; and homonymous hemianopia visual filed defects. A 50 percent rating is assigned for remaining field of 16 to 30 degrees bilaterally. A 70 percent rating is assigned for remaining field of 6 to 15 degrees bilaterally. A 100 percent rating is assigned for concentric contraction of visual field with remaining field of 5 degrees. 38 C.F.R. § 4.79. 

To determine the evaluation for visual impairment when both decreased visual acuity and visual field defect are present in one or both eyes and are service-connected, separately evaluate the visual acuity and visual field defect (expressed as a level of visual acuity), and combine them under the provisions of § 4.25. 38 C.F.R. § 4.77(c) (2017).

Lastly, the maximum evaluation for visual impairment of one eye must not exceed 30 percent unless there is anatomical loss of the eye. 38 C.F.R. § 4.75(d) . The evaluation for visual impairment may be combined with evaluations for other disabilities of the same eye that are not based on visual impairment (e.g., disfigurement under DC 7800). Id.

During an April 2009 VA examination, the Veteran complained of watering eyes and distorted and enlarged images. He indicated that he was not prescribed bedrest for this disability and that he treated his glaucoma symptoms with Alphagan-P eye drops in each eye. The examiner noted that the Veteran did not have a history of congestive or inflammatory glaucoma. Following a physical examination of the Veteran's eyes, the examiner noted that the Veteran's corrected far or distance vision was 20/20 in each eye. Impairment of visual field testing showed that the Veteran had an average contraction to 18 degrees (rounded up to the nearest whole number) in the right eye, which corresponded to an evaluation, in terms of visual acuity, of 20/100. Likewise, the Veteran's average contraction of the left eye was to 34 degrees, or vision acuity of 20/70. Furthermore, the examiner determined that the Veteran's bilateral glaucoma disability was not controlled well with medication and that surgery might be considered. 

A February 2010 VA ophthalmology note showed that the Veteran's visual acuity was 20/60 in the right eye and 20/40 in the left eye without correction, but did not indicate whether these acuity findings were for near or distance acuity. As noted above, the Schedule rates central visual acuity on the basis of corrected distance or far vision with central fixation. See 38 C.F.R. § 4.76. Thus, the Board shall not discuss further evidence of visual acuity noted for near or uncorrected visual acuity below. 

During a December 2011 hearing before a decision review officer (DRO), the Veteran indicated that he thought he would go completely blind someday due to his glaucoma symptoms. He testified that his left eye had better vision than his right eye, but that symptoms of glaucoma in both eyes affected him on a daily and weekly basis. He also indicated that his bilateral eye symptoms had worsened. 

Given this evidence, the Board finds that from February 5, 2009, to December 29, 2011, the Veteran's bilateral eye open-angle glaucoma manifested as visual acuity of no worse than 20/20 and field of vision limited to no worse than 18 degrees in the right eye, and visual acuity of no worse than 20/20 and field of vision limited to no worse than 34 degrees in the left eye. Specifically, while the Board has considered the Veteran's VA treatment records from 2010, as well as his December 2011 DRO hearing testimony, the Board determines that the April 2009 VA examination report is the most pertinent to rating the Veteran's bilateral eye symptoms because this report showed the Veteran's visual impairment based on visual acuity and visual field symptoms. Specifically, when combining the Veteran's visual acuity symptoms of 20/20 in each eye under DC 6066, a noncompensable disability rating is applicable. However, the Veteran's remaining field of vision of 18 degrees in the right eye indicates that this eye should receive a visual acuity finding of 20/100. Likewise, the Veteran's remaining field of vision of 34 degrees in the left eye indicates that it should receive a visual acuity finding of 20/70. Thus, the Veteran's right and left eye visual field impairment warrants a 30 percent disability rating under 38 C.F.R. § 4.79, DC 6066. Accordingly, the evidence is against a finding that a disability rating in excess of 30 percent is warranted for the Veteran's bilateral open-angle glaucoma symptoms from February 5, 2009, to December 29, 2011. 

The Veteran underwent another VA examination in December 2011, during which he complained of being sensitive to light, and having halos around lights and blurry vision. The examiner noted that the Veteran was taking daily eye drops to treat his symptoms. Following a physical examination, the examiner determined that the Veteran's visual acuity symptoms of far vision with best correction was 20/70 in the right eye and 20/60 in the left eye. This examiner performed a visual field examination and indicated that the Veteran had significant loss of visual field; however, after multiple requests by the RO to ascertain the Goldmann's equivalent III/4e target examination chart, including in January 2013 and May 2014, the record indicates that this field of vision chart is unavailable for review. 

An April 2013 VA ophthalmology note showed that the Veteran's best corrected visual acuity was 20/60 in the right eye and 20/30 in the left eye. Similarly, a May 2013 VA ophthalmology note showed that his best corrected visual acuity was 20/50 in the right eye and 20/25 in the left eye. Likewise, an August 2016 VA ophthalmology note showed that his best corrected visual acuity was 20/40 in the right eye and 20/20 in the left eye. 

During a July 2017 VA examination, the examiner diagnosed the Veteran with glaucoma, pigment epithelial detachment in the right eye, visual disturbance, dry eye, and bilateral cataracts. The Veteran complained of intermittent blurring of vision and fatigued eyes. The Veteran also indicated that his vision disability affected his ability to work. The Board notes that the Veteran was granted a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities, effective March 8, 2012, as that was the last time that he worked. Thus, the Board shall not discuss the impact of the Veteran's bilateral eye disability on his ability to work further below. 

A physical examination showed that the Veteran's corrected distance visual acuity was 20/50 in the right eye and 20/40 in the left eye. Impairment of visual field testing using the Goldmann chart showed that the Veteran had an average contraction to 11 degrees (rounded up to the nearest whole number) in the right eye, which corresponded to an evaluation in terms of visual acuity of 20/200. Similarly, the Veteran's average contraction of the left eye was to 56 degrees, or vision acuity of 20/50. 

Given this evidence, and after affording the Veteran the benefit of the doubt, since December 30, 2011, his bilateral eye open-angle glaucoma manifested as visual acuity of no worse than 20/70 and field of vision limited to no worse than 11 degrees in the right eye, and visual acuity of no worse than 20/60 and field of vision limited to no worse than 56 degrees in the left eye. The Board has considered the Veteran's statements, as well as the VA treatment records noted above; however, it determines that the December 2011 and July 2017 VA examination reports are the most pertinent in rating the Veteran's bilateral eye disability. Specifically, although the Veteran's visual acuity and visual field contraction was tested during the December 2011 VA examination, the record does not contain the Goldmann chart necessary to adjudicate the impairment in his visual field during that examination, even though the examiner noted significant impairment in visual field. Thus, after affording the Veteran the benefit of the doubt, the Board shall apply the findings noted in the July 2017 Goldmann chart for visual field impairment to the December 2011 visual acuity findings. Thus, the Veteran's visual acuity was 20/70 in the right eye and 20/60 in the left eye. This amounts to a disability rating of 20 percent under 38 C.F.R. § 4.79, DC 6066. Moreover, the Veteran's remaining field of vision in terms of visual acuity of 20/200 in the right eye and 20/50 in the left eye shows that a 30 percent disability rating is warranted under 38 C.F.R. § 4.79, DC 6066. As indicated in 38 C.F.R. § 4.77(c), when both decreased visual acuity and visual field defect are present in one or both eyes and are service-connected, VA separately evaluates the visual acuity and visual field defect (expressed as a level of visual acuity), and combines them under the provisions of 38 C.F.R. § 4.25 (2017). Therefore, the combination of 20 percent for visual acuity and 30 percent for visual field show that the Veteran's visual impairment symptoms warrant a 40 percent disability rating, but not higher, in December 2011. After applying the same calculations and analysis to the findings in the July 2017 VA examination report, the combination of 10 percent for visual acuity and 30 percent for visual field show that the Veteran's visual impairment symptoms warrant a 40 percent disability rating, but not higher, since July 10, 2017. 

However, a rating in excess of 40 percent is not warranted at any time since December 30, 2011, because the evidence does not show that the Veteran's visual impairment, both in terms of corrected distance visual acuity and visual field impairment, was severe enough to warrant higher disability ratings pursuant to the Schedule. See 38 C.F.R. §§ 4.75, 4.76, 4.76a, 4.77, 4.78, 4.79 (2017). 

In sum, after applying the benefit of the doubt doctrine, the evidence is in equipoise in showing that the Veteran's glaucoma disability warrants a disability rating of 40 percent, but not higher, from December 30, 2011, to July 9, 2017. However, the evidence does not show that the Veteran's disability picture warrants a rating in excess of 30 percent from February 5, 2009, to December 29, 2011, and in excess of 40 percent since July 10, 2017. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the Veteran's claim must be denied for these time periods. See 38 C.F.R. § 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Application to Reopen Entitlement to Service Connection

In February 2009, the Veteran submitted an application to reopen the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation. Specifically, he has asserted throughout the appeal that his one-time exposure to paint fumes in service caused his current respiratory symptoms. 

VA may reopen and review a claim that has been previously denied if new and material evidence is submitted by or on behalf of a veteran. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a); see Hodge v. West, 155 F.3d 1356 (Fed. Cir. 1998). 

Regarding petitions to reopen filed on or after August 29, 2001, 38 C.F.R. § 3.156(a) defines "new" evidence as evidence not previously submitted to agency decision makers and "material" evidence as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). In determining whether this low threshold is met, VA should not limit its consideration to whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA Secretary's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118.

When determining whether the claim should be reopened, the credibility of the newly submitted evidence is presumed. See Justus v. Principi, 3 Vet. App. 510 (1992). The newly presented evidence need not be probative of all the elements required to award the claim, just probative of each element (or at least one element) that was a specified basis for the last disallowance of the claim. See Evans v. Brown, 9 Vet. App. 273, 283 (1996); see also Hodge, 155 F.3d at 1363 (noting that new evidence could be sufficient to reopen a claim if it could contribute to a more complete picture of the circumstances surrounding the origin of a claimant's injury or disability, even where it would not be enough to convince the Board to grant the claim). 

In a May 2007 rating decision, the RO denied an application to reopen a claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, because the Veteran had not submitted new and material evidence since the previous denial of this claim showing that a current respiratory disorder was related to his one-time exposure to polyurethane paint during active duty service. The Veteran appealed this decision in a September 2007 NOD. Although an SOC was issued to the Veteran's last known address in October 2007 continuing the denial of his claim, the Veteran did not perfect an appeal to the Board and he did not submit new and material evidence within one year of the May 2007 rating decision. Thus, the May 2007 rating decision is final as to the evidence then of record, and is not subject to revision on the same factual basis. See 38 U.S.C. § 7105(b); see also 38 C.F.R. §§ 3.104, 3.156(a), 20.302, 20.1103. 

Since the May 2007 rating decision, the Veteran has submitted additional contentions that his current respiratory disorder is caused by his in-service exposure to polyurethane paint, including in his December 2011 DRO hearing testimony. The Board notes that these contentions are the same or very similar contentions he made to VA adjudicators prior to the issuance of the May 2007 rating decision. Thus, these additional assertions are not new. 

The claims file also includes November 2009 and November 2012 VA treatment records showing normal lung and respiratory symptoms. While a March 2010 VA sleep study shows that the Veteran had mild obstructive sleep apnea, which affects his respiratory system, service connection for this disorder was denied in March 2013, and the Veteran has not appealed that decision. 

The claims file also includes a January 2012 VA examination for respiratory disorders, in which the examiner did not diagnose the Veteran with any respiratory disorder following a physical examination. Furthermore, after reviewing the pertinent records, noting the Veteran's self-reported symptoms and history, and performing a physical examination, this VA examiner opined that it is not likely that the Veteran's current respiratory disorder or sleep apnea was related to his one-time inhalation of paint fumes while in service. The examiner provided a thorough explanation for this negative nexus opinion, including that it is more than likely that the Veteran's respiratory problems are related to his smoking history and chronic civilian exposures, including his employment as an extruder working with solvents and as an HVAC technician. 

Evidence associated with the claims file since the May 2007 rating decision, when considered by itself or in connection with evidence previously assembled, does not relate to an unestablished fact necessary to substantiate the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, and does not raise a reasonable possibility of substantiating the claim. Specifically, while the Veteran has made additional assertions since the May 2007 rating decision that his current respiratory disorder is related to his active duty service, these assertions are not new as they were known to VA adjudicators at the time of the previous denial of this claim. Additionally, although the VA treatment records associated with the claims file since May 2007 are new, they are not material to his claim because they do not indicate that he has a current respiratory disorder related to his in-service inhalation of paint fumes. Finally, the January 2012 VA examination report is also new but not material to the Veteran's claim because it indicates that the Veteran's current respiratory disorder is not caused by his active duty service. 

Overall, the new lay and medical evidence does not raise a reasonable possibility of substantiating the claim. Accordingly, the application to reopen the claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, is denied. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.



ORDER

A disability rating in excess of 30 percent for glaucoma, to include glaucoma with pigment epithelial detachment, from February 5, 2009, to December 29, 2011, and in excess of 40 percent since July 10, 2017, is denied; however, a disability rating of 40 percent, but not higher, from December 30, 2011, to July 9, 2017, is granted. 

The application to reopen a claim of entitlement to service connection for a respiratory disorder, to include shortness of breath and poor circulation, is denied. 




____________________________________________
A. P. SIMPSON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs